In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2996

LARRY A. BOSS,

*Plaintiff-Appellant,*

*v.*

JULIAN CASTRO, Secretary of
  Housing and Urban Development,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 6007 — **Edmond E. Chang**, *Judge.*

ARGUED APRIL 21, 2015 — DECIDED MARCH 18, 2016

Before EASTERBROOK and RIPPLE, *Circuit Judges*, and
REAGAN, *District Judge*[*].

REAGAN, *District Judge*. Larry Boss worked as a general
engineer for the U.S. Department of Housing and Urban Development ("HUD") from 2002 to 2011. Pursuant to Title VII

[*] Of the Southern District of Illinois, sitting by designation.

of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. § 2000e-16), he sued the HUD Secretary[1] on theories of workplace discrimination (Boss is an African-American), retaliation (for a prior EEOC discrimination complaint), and hostile work environment. The district court granted summary judgment against Boss. For the reasons set forth below, we affirm.

## I. Background

Our review of the case requires some preliminary discussion regarding two matters.

First, Boss has challenged the district court's application of Local Rule 56.1, which controls the presentation of evidence at the summary judgment stage. *See* N.D. Ill. L.R. 56.1.; *Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014). The rule requires a movant to submit a statement of material facts consisting of enumerated, short, numbered paragraphs with specific references to the record. N.D. Ill. L.R. 56.1(a)(3). The non-movant counters with correspondingly numbered paragraphs summarizing the movant's position, responses (with specific cites to the record), and a statement of any additional facts that support denial of summary judgment. N.D. Ill. L.R. 56.1(b)(3). The district court's discretion to require strict compliance with Local Rule 56.1 has been upheld time and again. *See Petty*, 754 F.3d at 420; *Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 654–55 (7th Cir. 2011); *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002).

---

[1] Title VII authorizes suits against the employer as an entity, not against individual agents of the employer. *Smith v. Bray*, 681 F.3d 888, 896 n. 2 (7th Cir. 2012).

In comparing the district court's thorough recitation of the facts to Boss' Rule 56.1 submission, we find no abuse of discretion. Tellingly, Boss could not dredge up a single specific fact that the district court ignored that would have materially altered the Court's Title VII analysis. Notably, litigants who challenge a district court's application of the Northern District's Local Rule 56.1 must point to a fact or facts that (1) should have been considered under the local rule; (2) were not considered; and (3) are material to the summary judgment analysis. Instead, Boss points to a proverbial haystack and asks us to find his needle. We decline to do so. *See D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015) (courts not required to "scour the record looking for factual disputes" or "piece together appropriate arguments").

Next, we note that a great deal of Boss' arguments and evidence is impermissibly intertwined with—and relies upon—the conclusions of an administrative law judge who, in January 2009, held a hearing on Boss' 2007 Equal Employment Opportunity Commission complaint that included testimony from Boss and several other witnesses. While we can consider admissible statements from witnesses in that case as relevant evidence here, the value of the administrative judge's *legal* conclusions (or, indeed, her factual assertions— she had no personal knowledge of any factual matter) as applied to *this* case is nil.[2] Boss cites no precedent—and we

---

[2] Boss hangs his hat on the administrative judge's conclusion that Defendant Ladias subjected him to a hostile work environment in late 2007. While that case is certainly not before us, it bears noting that the administrative judge reached her conclusion without considering both the objective and subjective offensiveness of Ladias' actions. *See Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014).

find only contrary case law—for the notion that an administrative judge's legal conclusions should have preclusive effects on subsequent federal court proceedings. *See Welch v. Johnson*, 907 F.2d 714, 719 (7th Cir. 1990) (citing *Univ. of Tenn. V. Elliot*, 478 U.S. 788, 796 (1986) (unreviewed administrative proceedings have no preclusive effect in federal court Title VII litigation)).

## II. Facts

Boss, an African-American, worked for HUD from 2002 to 2011. For about seven of his nine years, he was supervised by Eleny Ladias, who evaluated him at the "highly successful" level from 2002 through 2006. Then, in 2007, he contacted an EEOC counselor and initiated a race, sex, and age discrimination complaint against Ladias. The administrative law judge found no discrimination based on Boss' immutable characteristics, but did find Ladias discriminated against him for filing the EEOC complaint.

In May 2009, Boss made another informal complaint (this time claiming only race discrimination and retaliation). He alleged several discriminatory and retaliatory acts, including being put on a performance improvement plan ("PIP") because he was behind on "closing out" his assigned grants (presumably money given by HUD to qualifying organizations or individuals). The PIP was initiated in late June or early July 2008, and ended in November 2008 after Boss completed his closeouts. Another employee, Alease Thomas (who helped Boss' contemporaries process their grants), assisted Boss with the substantive parts of his closeout assignment.

Boss complained about several other matters. He was marked absent without leave ("AWOL"); he was criticized for not attending a teleconference; he was assigned cases from a retired HUD engineer; and he was required to come to work on what was normally his assigned telework day. Evidence in the record shows Boss was indeed absent without having sought leave from his supervisors. He had also been asked to substantiate his ability to work from home after he was unable to complete a task assigned by his supervisor.

In October 2009, after HUD received notice of the administrative judge's ruling against Ladias, Boss was transferred to the supervision of Elmore Richardson, who changed Boss' midyear evaluation from "highly" to "fully" successful (allegedly in retaliation for Boss' EEOC activity, but—according to Richardson—really because it was discovered that Thomas had helped with the late 2008 closeouts).

In July 2012, Boss filed this suit pursuant to Title VII. Generally, he alleged discrimination (on the basis of his race), retaliation (on the basis of his EEOC complaints), and a hostile work environment (which we will generously construe as stemming from racial motives or from a retaliatory animus). The district court granted summary judgment, finding Boss had not adduced evidence to support the assertion that any of the incidents constituted an adverse employment action, that Boss was not subjected to disparate treatment relative to similarly-situated employees, and that Boss had not suffered from a work environment that could be shown to be objectively hostile. Boss appeals, and we affirm.

### III. Analysis

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Gerhartz v. Richert*, 779 F.3d 682, 685 (7th Cir. 2015). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014). We construe all inferences in the non-movant's favor, but he is not entitled to the benefit of inferences that are supported only by speculation or conjecture. *Nichols v. Mich. City Plant Planning Dept.*, 755 F.3d 594, 599 (7th Cir. 2014). If there is no triable issue of fact on even one essential element of the nonmovant's case, summary judgment is appropriate. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). We may affirm the district court's grant of summary judgment for any reason supported by the record. *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).

Title VII makes it unlawful for an employer to discriminate against any individual "because of such individual's race." 42 U.S.C. § 2000e-2(a)(1); *Alexander*, 739 F.3d at 979. The statute also forbids employers from retaliating against employees for complaining about prohibited discrimination. 42 U.S.C. § 2000e-3(a); *Chaib v. Indiana*, 744 F.3d 974, 986 (7th Cir. 2014). And as pertinent to this case, Title VII prohibits subjecting an employee to a hostile work environment. *Orton-Bell*, 759 F.3d at 773.

Boss' failure to show he suffered an adverse employment action dooms his discrimination and retaliation claims. As to

his hostile work environment claim, Boss cannot show he was subjected to a workplace that was objectively abusive.

### A. Discrete Incidents of Discrimination & Retaliation

Though the framework has received criticism, *see Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring), litigants and courts properly discuss Title VII discrimination and retaliation claims using the language of the "direct" and "indirect" methods of proof. *Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 789–90 (7th Cir. 2015) (discrimination); *Harden v. Marion Cnty. Sheriff's Dep't*, 799 F.3d 857, 861 (7th Cir. 2015) (retaliation). Under either method, the ultimate question at the summary judgment stage is whether a reasonable jury could find prohibited conduct. *See Simpson*, 780 F.3d at 790. But we still must consider the two methods separately when reviewing a grant of summary judgment. *Id.*

### 1. The Discrimination Claim

In a Title VII discrimination case, avoiding summary judgment using the direct method requires a plaintiff to marshal sufficient evidence (either direct or circumstantial) that an adverse employment action was motivated by discriminatory animus. *Coleman*, 667 F.3d at 845. Direct evidence—an overt admission of discriminatory intent—is rare, and not at issue where, as here, no supervisor admits racial motivation. *See Simpson*, 780 F.3d at 790.

Circumstantial evidence typically includes (1) suspicious timing, ambiguous statements (oral or written) or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly-situated employees outside the pro-

tected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Id.* Circumstantial evidence "must point directly to a discriminatory reason for the employer's action." *Id.* (quoting *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 777 (7th Cir. 2013)). For example, remarks by a defendant must at least reflect illegal motivation. *Id.* at 791 (citing *Sheehan*, 173 F.3d 1039, 1044 (7th Cir. 1999)). Further, a plaintiff's subjective beliefs are insufficient to create a genuine issue of material fact under the direct method. *Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012); *Mlynczak v. Bodman*, 442 F.3d 1050, 1058 (7th Cir. 2006). And under the direct method, a finding of intentional discrimination may not be established merely with evidence that a person outside the protected class was treated better than the plaintiff. *Simpson*, 780 F.3d at 794.

Because "smoking gun" evidence of discriminatory intent is hard to come by, the "indirect method" (*i.e.*, the *McDonnell Douglas* "burden-shifting" framework) evolved. *Coleman*, 667 F.3d at 845 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the indirect method, a plaintiff must introduce evidence that he (1) is a member of a protected class; (2) performed his job satisfactorily; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly-situated employee outside of his protected class. *Nichols*, 755 F.3d at 604–05. A similarly-situated employee is one whose performance, qualifications, and conduct are comparable in all material respects. *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 463 (7th Cir. 2014).

If the plaintiff establishes that *prima facie* case, the burden shifts to the defendant to provide a legitimate reason for the

adverse employment action. *Nichols*, 755 F.3d at 605. If the defendant gives a legitimate reason, then the plaintiff must provide evidence that the defendant's proffered reason is a pretext for discrimination. *Id.* In other words, when a defendant proffers legitimate, nondiscriminatory reasons for its employment actions, the defendant wins, unless plaintiff refutes the underlying facts (which would reveal those reasons were dishonestly given). *Simpson*, 780 F.3d at 798.

Under the indirect method, when an employer articulates a plausible, legal reason for its action, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for its action. *Silverman v. Bd. of Ed.*, 637 F.3d 729, 738 (7th Cir. 2011). The federal courts are not a super-personnel department that second-guesses facially legitimate employer policies. *Widmar*, 772 F.3d at 464. It is not the role of the court to determine whether an employer's expectations were fair, prudent, or reasonable. *Id.* So long as its management decision was not a guise for a discriminatory purpose, we must respect that decision. *Id.*

In a discrimination case, a materially adverse employment action is one which visits upon a plaintiff "a significant change in employment status." *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 235 (7th Cir. 2014). Such changes can involve the employee's current wealth, his career prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace. *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007).

Here, no incident comes close to constituting such a change in employment status. (Insofar as Boss argues for a

"totality of the circumstances" view, the caselaw limits that approach to his hostile work environment claims, which we consider below. *See Hall v. City of Chicago*, 713 F.3d 325, 334 (7th Cir. 2013); *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011)). The district court's summary judgment order explains why eight separate incidents failed to meet the adverse employment action standard. Boss points to only three on appeal: his placement on the PIP, being charged AWOL, and inordinately strict application of HUD's telework policy. (Discrimination claims based on the other five incidents are forfeited. *See Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 308 (7th Cir. 2010)).

As to his placement on a PIP, this Court has held that implementing such a plan is simply not materially adverse in the discrimination context. *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014); *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009). Nor does requiring an employee to substantiate his time off (and noting when he does not) constitute an adverse employment action. *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 383–84 (7th Cir. 2002). And asserting that a "lost" telework day (it wasn't lost, just rescheduled) constitutes an adverse employment action borders on the frivolous. Losing one day of telework hardly constitutes the "significant change in benefits" needed to trigger Title VII liability. *Lewis*, 496 F.3d at 653. *See O'Neal v. City of Chicago*, 392 F.3d 909, 913 (7th Cir. 2004).

Establishing a *prima facie* discrimination case requires sufficient evidence of a materially adverse employment action. Boss has failed to adduce that evidence, so his discrimination case fails.

### 2. The Retaliation Claim

A Title VII plaintiff proceeding under the direct method must show that (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Harden*, 799 F.3d at 861–62 (citing *Coleman*, 667 F.3d at 859). A causal link requires more than the mere fact that an employer's action happens after an employee's protected activity. *Silverman*, 637 F.3d at 741.

To prove retaliation under the indirect method, a plaintiff must show that (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; (3) he was meeting his employer's legitimate expectations; and (4) he was treated less favorably than similarly-situated employees who did not engage in protected activity. *Harden*, 799 F.3d at 862 (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008)). Once a *prima facie* case is established, a presumption of retaliation is triggered, and the burden shifts to the employer to articulate some legitimate, nonretaliatory reason for its action. *Id.* (citing *Coleman*, 667 F.3d at 845). When the employer does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is a pretext, which in turn permits an inference of unlawful retaliation. *Id.*

In the retaliation context, determining whether an action is materially adverse means inquiring whether it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Because Title VII does not set forth a general civility code for the American workplace, its anti-retaliation provision does not protect against

petty slights, minor annoyances, and bad manners. *Id.* An employee must suffer something "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Hobbs v. City of Chi.*, 573 F.3d 454, 463–64 (7th Cir. 2009).

Boss advances five purportedly adverse actions (required under both methods) that he claims were based on a retaliatory animus. We take them in turn, highlighting their deficiency in meeting the anti-retaliation provision's "materially adverse action" standard and pointing out several alternative grounds for judgment as a matter of law.[3]

Boss' telework travails—which in the end constitute a single reassigned day of flexible worktime—lie far below the level needed to trigger retaliation liability. Unfair reprimands or negative performance reviews, unaccompanied by tangible job consequences, do not suffice, so there was no material adversity when Boss' boss downgraded him from "highly successful" to "fully successful," or when Boss was disciplined for failing to close out grants. *See Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010). Nor does Boss adduce admissible evidence that his evaluation or the PIP were tied to his bonus or any other tangible job consequence. Further, Boss provides no direct causal link between his EEOC complaint and either the PIP or his performance review, which happened four months after Ladias became aware of the EEOC complaint. And regarding his "close-outs," which were the basis for the PIP, Boss identifies not a single similar-

---

[3] We do not mean to suggest these are the *only* reasons Boss' claims fail. His appeal falls far short on numerous grounds that we need not address, since missing even a single conjunctive element dooms any of his theories. *CITGO Petroleum Corp.*, 561 F.3d at 702.

ly-placed employee for whom Alease Thomas did substantive work like she did for him.

Likewise, Boss' AWOLs do not constitute activity that would have dissuaded a reasonable worker from making or maintaining a discrimination charge. In any event, Boss identifies no employee who missed work without some sort of flexible scheduling arrangements, or without being required to substantiate their leave, or without being similarly disciplined. *See Herzog v. Graphic Packaging Intern., Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Finally—pointing to no admissible evidence of specific incidents—Boss argues he was subjected to "a barrage of criticism" and "workplace stresses." But conclusory assertions do not constitute evidence, and so cannot overcome summary judgment. *Hart v. Mannia*, 798 F.3d 578, 596 (7th Cir. 2015); *Montgomery v. Am. Airlines*, 626 F.3d 382, 389 (7th Cir. 2010).

Perhaps most damningly, Boss' employers adduced evidence showing that he had failed to meet their legitimate expectations, thereby rebutting any presumption that their actions were taken in retaliation for Boss' EEOC case. In other words, he was put on a PIP because his performance needed improving; he was noted AWOL because he was absent without leave. Boss attempts to counter with evidence of pretext on the part of his supervisors, but those efforts are futile. He must identify other employees who engaged in comparable misconduct. *Argyropoulos*, 539 F.3d at 735. His attempts to do so depend on speculation about other employees' work histories. As an example, Boss points to other employees who exercise during the day. This is insufficient: maybe they put in for time off, or maybe they arrive early to offset the hours, or maybe they were punished too. The rec-

ord doesn't tell us, and speculation is not evidence. Summary judgment on Boss' retaliation claim was proper.

### B. Hostile Work Environment

Title VII, in addition to prohibiting discrimination that has direct economic consequences, forbids employers from requiring people to work in a discriminatorily hostile or abusive environment. *Vance v. Ball State Univ.*,133 S.Ct. 2434, 2440–41 (2013); *Nichols*, 755 F.3d at 600. When "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated. *Alexander*, 739 F.3d at 982 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). *See also Hobbs*, 573 F.3d at 464 ("Retaliatory harassment can rise to the level of a hostile work environment when it is severe enough to cause a significant change in the plaintiff's employment status.").

Surviving summary judgment on a hostile work environment claim requires sufficient evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Nichols*, 755 F.3d at 600 (quoting *Alexander*, 739 F.3d at 982). *See also Knox v. Indiana*, 93 F.3d 1327, 1334–35 (7th Cir. 1996) (recognizing retaliatory hostile work environment theory). Though there is a paucity of caselaw on the matter, we see no reason retaliation-based actions by an employer must somehow be less objectively offensive than in the context of sex or race. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68–69; *Gowski v. Peake*, 682 F.3d

1299, 1312 (11th Cir. 2012). We consider the hostile work environment claim under a "totality of the circumstances" approach. *See Ellis*, 650 F.3d at 647; *Hall*, 713 F.3d at 331 (courts should not carve up incidents of harassment then separately analyze each one).

Deciding whether a work environment is hostile requires consideration of factors like the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance. *Alexander*, 739 F.3d at 982.

Here, those factors, in concert with the absence of admissible evidence suggesting Boss' bosses were animated by retaliatory animus, tip strongly against Boss. Boss was not physically threatened or humiliated, and much of the "interference" with his job was, as discussed above, reasonable: it stemmed from his own failure to meet legitimate employment expectations. Without the specter of the (legitimate, non-pretextual) PIP, the AWOL marks, and "criticism," Boss' allegations become a mishmash of complaints about overwork rather than about a place permeated with intimidation, ridicule, and insult. Such frustrations do not support a hostile work environment claim, especially where the record fails to link the actions of Ladias or Richardson to retaliatory animus. *See Orton-Bell*, 759 F.3d at 774 (plaintiff required to show offensive, severe events happened *because* she was a woman).

Alternatively, we look to the objective offensiveness of Boss' supervisors' actions. Any notion of a race-based hostile environment can be quickly dispatched. The record contains not a single racially offensive remark, email, or other hint of

racial animus. In any event, Boss did not argue the point below; it is forfeited.

Regarding potential retaliatory hostile work environment, analogs to the race and gender contexts show this case lies far below the objective standard for an abusive environment. This Court has affirmed summary judgment where a plaintiff grieved of non-threatening, non-humiliating conduct in the form of a comment that could have been construed as racial (and some abuse of other protected employees for non-racial reasons), *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004); where the plaintiff was referred to (out of his presence) as a "black motherf---er," *Smith v. N.E. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004); and where a plaintiff was called a "black n----r" (albeit once) by a co-worker, *Nichols*, 755 F.3d at 601. On the other hand, we have found hostile work environments where a plaintiff was referred to by a racial slur between five and ten times, *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675–76 (7th Cir. 1993); where a plaintiff was subjected to at least 18 sex-based comments over ten months, *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 786 (7th Cir. 2007); and where an employee was given a completely duplicative (and mind-numbing) task, forbidden from speaking to her co-workers, prohibited from meetings, and barred from taking on more work, *Hall*, 713 F.3d at 328, 331.

The facts in this case are a far cry from the type of offensiveness that supports a hostile work environment claim. Boss was assigned tasks he did not prefer, but those tasks were far from the mind-numbing tasks that had already been performed in *Hall*. Nowhere in the record are comments meant to intimidate him, threaten him, or which

would be so severe or persuasive as to alter his work environment. The evidence does not suffice to show a workplace permeated with discriminatory ridicule, intimidation, and insult, or one where Boss' supervisors acted against him for any prohibited reason. The district court properly granted summary judgment on Boss' hostile work environment claim.

## IV. Conclusion

For the foregoing reasons, the district court's entry of summary judgment against Larry Boss is AFFIRMED.