In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-3365

LEIF HINTERBERGER, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF INDIANAPOLIS,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-1341 — **Sarah Evans Barker**, *Judge*.

ARGUED JUNE 1, 2020 — DECIDED JULY 15, 2020

Before RIPPLE, WOOD, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Courts expect parties to know and
follow local rules of practice. Failing to do so can prove fatal.
Leif Hinterberger's case shows how and why. The district
court rejected his statement of facts for violating the Southern
District of Indiana's rule governing summary judgment prac-
tice. The statement misrepresented the evidence, contained
inaccurate and misleading citations to the record, and pre-
sented improper arguments rather than materially disputed

facts. We empathize with the district court's exasperation and see no abuse of discretion in its striking Hinterberger's statement. Nor did the district court commit any error in entering summary judgment against Hinterberger on each of his claims. So we affirm.

**I**

**A**

Leif Hinterberger sought to establish a commercial and residential development—a so-called mixed-use development—in Indianapolis's midtown area. Through a series of letters and meetings, the City led Hinterberger to believe it would help fund the development. But the deal ultimately fell through, leaving Hinterberger without any public funding for the project and substantial losses. He sued the City in federal court to recover.

The ill-fated project began in 2005, when Hinterberger acquired land at the intersection of 49th Street and College Avenue with the intention of developing a small commercial establishment called the Uptown. He originally planned not to seek any public assistance. But that changed when Hinterberger spoke to Maury Plambeck, the director of the Indianapolis Department of Metropolitan Development, about the project later that summer. Plambeck suggested that Hinterberger acquire the other half of the block to add a residential component. Plambeck noted that the City could help pay for the mixed-use development through various means, such as federal grants and tax increment financing (often shorthanded as TIF). He recommended that Hinterberger work with Charles Cagaan, a partner with Mansur Real Estate who

was more familiar with this public funding process. Hinterberger did so over the next couple of years.

By 2007 Hinterberger had finished his financial analyses, acquired the adjacent land as Plambeck suggested, and obtained a rezoning of the property. He was ready to begin construction, which he estimated would take between 16 and 19 months. But around this time, the economy took a sharp downturn and the Uptown development stalled.

The outlook brightened over the next few years. The City sent Hinterberger several letters renewing its commitment to the Uptown and proposing various conditional public financing options. A letter dated April 4, 2008, for example, stated that "the City of Indianapolis is prepared to offer financial support" to the tune of over $1 million in grants. And in a November 12, 2009 letter, the City offered to borrow $750,000 to help get the project started. Each of those (and other) letters contained preconditions that Hinterberger had to satisfy to receive public funding. Hinterberger never met the preconditions, however, and the City never dispersed any funds to support the Uptown.

What resulted for Hinterberger was acute financial distress. By 2010 he defaulted on his loans and had to sell the additional property that he had purchased for apartments three years earlier.

Despite these difficulties, in September 2011 the City still reassured Hinterberger with a "letter of support" that was "intended to show investors that the City is fully committed to the Uptown Project." Indeed, the City reiterated its previous offer of $1 million in grant support for the Uptown if Hinterberger could regain control of the entire block. It also noted

that it was considering implementing a Midtown TIF redevelopment district that would encompass the site, and TIF funds might be available soon. Hinterberger pushed forward, hoping he could still realize his project.

But establishing a Midtown TIF district took time. The City created it in July 2012, but TIF funding did not become available for distribution until May 2015. In the meantime, Hinterberger went bankrupt and what remained of his property was sold at a sheriff's sale on August 15, 2012. So, after seven years of work on the Uptown project, Hinterberger lost everything. Years later—after the TIF money had become available—the City worked with other firms to redevelop the midtown neighborhood.

B

Litigation followed. On May 31, 2016, Hinterberger sued the City of Indianapolis, Mansur Real Estate Services, and Cagaan in the Southern District of Indiana. The complaint advanced eight claims, including ones under the U.S. Constitution, against the City of Indianapolis. Hinterberger likewise alleged claims under Indiana law against all defendants.

Discovery proceeded for almost two years. The City eventually filed a motion for summary judgment, which the district court granted in full. How the district court came to that decision is front and center in this appeal. And the proper starting point comes with a few words of background on summary judgment practice in federal court.

Summary judgment is all about determining whether facts are disputed to a degree to warrant a trial or instead entitle a party to prevail as a matter of law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The procedure

emerged in England in the late nineteenth century, entered practice in state courts around 1930, and today is entrenched in state and federal practice. See FED. R. CIV. P. 56 advisory committee's note to 1937 amendment; see also Arthur R. Miller, *The Pretrial Rush to Judgment*, 78 N.Y.U. L. REV. 982, 1017–18 (2003).

Summary judgment practice requires the parties and courts alike to roll up their sleeves. Discerning the existence of a "genuine dispute as to any material fact" can be tedious and time consuming. Today's Federal Rules recognize this and strive to ease the burden on courts by requiring a "party asserting that a fact cannot be or is genuinely disputed" to support that position by citing "particular parts of materials in the record" or, conversely, "showing that the materials cited do not establish the absence or presence of genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

Local rules often provide even further direction and have the force of law. See *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010). Though the specifics may vary, many districts require the parties to submit factual statements to assist with identifying and isolating the disputed from the undisputed—all to help the court assess whether a particular claim should proceed to trial or instead can be resolved on the existing record. The aim is not to make busywork but instead "to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

The Southern District of Indiana's Local Rule 56-1 specifically requires that a party seeking summary judgment

include a section called "Statement of Material Facts Not in Dispute." See S.D. Ind. Local Rule 56-1. The party opposing summary judgment must then respond with a "Statement of Material Facts in Dispute" that "identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." *Id.* In addition to prohibiting the inclusion of any argument—which should be saved for briefing—the Local Rule requires that all asserted material facts be supported by specific citations. See *id.* The obligation falls to the parties, not the district court. The movant's facts are admitted unless the non-movant "specifically controverts" them in its factual statement, shows them to be unsupported, or demonstrates that reasonable inferences can be drawn in its favor. *Id.*

After the City moved for summary judgment, Hinterberger submitted his own Statement of Material Facts in Dispute. The district court rejected the statement in its entirety for failing to comply with Local Rule 56-1. Striking Hinterberger's statement had the practical effect of the court crediting in full the facts presented by the City in its Rule 56-1 statement. Right to it, the court's wholesale rejection of Hinterberger's statement doomed his case, for the facts presented by the City left Hinterberger with no evidentiary basis to prevail on any claim. In the end, the court entered summary judgment for the City and ordered Hinterberger's attorneys to show cause why they should not be sanctioned for their conduct pursuant to Federal Rule of Civil Procedure 11(c).

But even after winning its summary judgment motion, the City still did not have a final judgment, as another defendant remained in the case. Desiring finality, the City filed a motion under Federal Rule of Civil Procedure 54(b), which allowed

the district court to find that there was no just reason for delay and in turn to direct entry of partial final judgment as to the City. See *Constr. Indus. Ret. Fund of Rockford, Ill. v. Kasper Trucking, Inc.*, 10 F.3d 465, 468 (7th Cir. 1993). Hinterberger then appealed.

## II

Hinterberger's underlying appeal entails meaningful complexity, with claims relating to multiple constitutional rights, torts, a contract, and an Indiana statute. Our resolution of the appeal does not require us to wade into those complexities, however. Because we see no abuse of discretion in the district court's decision to reject Hinterberger's Rule 56-1 statement, we must accept the facts as the district court did—as presented by the City. Even viewing those facts in the light most favorable to Hinterberger, he cannot prevail on any claim. Each of his claims lack evidentiary support in the record—a reality that even Hinterberger's counsel (to his credit) candidly acknowledged during oral argument.

## A

The case begins and ends with the recognition that district courts may require strict compliance with their local rules—a point we have recognized time and again. See, *e.g.*, *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002); *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000). We review their enforcement only for an abuse of discretion, see *Friend v. Valley View Comm. Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015), and further "give a district judge's interpretation of [her] court's local rules . . . considerable weight," *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

In response to the City's summary judgment motion, Hinterberger filed a statement of disputed material facts as required by Local Rule 56-1. The statement identified nine topical areas of allegedly disputed facts and from there explained those facts in paragraphs. Measured by its appearance, Hinterberger's statement looked compliant.

But the district court's careful review revealed that Hinterberger's statement, as the court put it, "ha[d] all the appearance of diligence and competence without a crumb of their substance." The court found that the statement failed to respond to the City's account of the material facts and instead presented a version of events replete with impermissible argument and unsupported by citations to record evidence. The statement, the court concluded, altogether failed to identify the potentially determinative facts that Hinterberger contended required resolution at a trial. The court did not mince its words: "Put simply, this is not lawyering in good faith. It is lawyering by confusion, equivocation, and obfuscation. It is antilawyering."

Our own review of Hinterberger's summary judgment submission shows that the district court's frustration was well placed. A sampling of the various problems with Hinterberger's Rule 56-1 statement proves the point:

- The statement is laden with improper and unsupported argument. For example, it claims that "[a]dditional discussions with City representatives . . . repeated the promises of gap financing, and furthered Hinterberger's reliance and compliance with demands made on him" and "[t]he City and its agents were actively involved in destroying not only the Uptown project and the

neighboring Uptown Business Center but also Hinterberger's livelihood and reputation." But these representations come with no citations to record evidence, as required by Local Rule 56-1.

- Many of the citations are misleading, seemingly added only to create the appearance of support. For instance, one sentence about the City's interference with Hinterberger's attempt to negotiate the repurchase of his property purports to draw support from Exhibit 104. But our own review shows that Exhibit 104 contains 28 fully redacted (entirely blacked-out) pages. In another place, Hinterberger's statement cites both Exhibit 49 and Exhibit 126, which it turns out are the exact same email.

- Some citations reveal serious misstatements of the record evidence. One part of Hinterberger's statement represents that a particular witness, Ryan Vaughn, characterized the City's letters of commitment as "unconditional." The statement comes with a citation to Vaughn's deposition testimony. But in his deposition, Vaughn only testified that that the letters were "casual" and "pretty clear that those offerings [were] contingent." Another part of Hinterberger's statement represents that a different City employee "testified that he could not work with Hinterberger due to Vaughn's statements." But that employee's deposition does not even mention Vaughn or his comments.

Faced with such noncompliance with Local Rule 56-1, the district court committed no abuse of discretion in striking Hinterberger's statement of disputed material facts. Or, as we put a similar observation on a prior occasion, Hinterberger's statement was "so full of argument, evasion, and improper denials that it defeat[ed] the whole point of [the summary judgment rule]—to identify just what facts are actually in dispute." *Bordelon*, 233 F.3d at 528. Striking the entire statement (rather than only the offending material) was not too harsh because requiring the district court to sift through "improper denials and legal argument in search of a genuinely disputed fact" would defeat the purpose of the rule. *Id.* at 529. The district court does not shoulder the obligation to separate the fair from the foul, doing the work for the parties and identifying what facts are truly disputed and may require resolution at a trial.

It makes no difference that the district court, alongside striking Hinterberger's Rule 56-1 statement, declined to sanction his counsel. The district court had considerable discretion in deciding whether to issue Rule 11 sanctions. See 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1336.1 (4th ed.); *National Hockey League v. Metro. Hockey Club*, 427 U.S. 639 (1976). Striking a noncompliant Rule 56-1 statement that creates an intolerable amount of work for the court but later declining to impose sanctions was reasonable. Though it was Hinterberger (and not his counsel) that ultimately paid the price of the deficient Rule 56-1 statement, it is well established that "[a]ttorneys' actions are imputed to their clients, even when those actions cause substantial harm. A litigant bears the risk of errors made by his chosen agent." *Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 564 (7th Cir. 2007).

B

Given the district court's acceptance of the City's facts, all claims resolve in its favor at summary judgment. Without his own statement of material facts, Hinterberger had no way to show a factual dispute.

We do not need to march through each of Hinterberger's claims against the City. Two brief examples illustrate the point.

Hinterberger brought a so-called class of one claim under the Equal Protection Clause of the Fourteenth Amendment. See *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To survive summary judgment, he had to point to evidence creating a trial issue on whether he "has been intentionally treated differently from others similarly situated" when "there is no rational basis for the difference in treatment." *Id*.

But such evidence is altogether lacking in the population of summary judgment facts credited and considered by the district court. Missing from Hinterberger was any evidence to rebut the City's argument that it rationally treated other developers differently because they had better timing and met the conditions of the public funding. This would be a difficult claim even with his Rule 56-1 statement. Without it, the claim fails out of the gate.

Hinterberger's state law claims likewise fail. He alleged that the City breached the nondisclosure agreement signed by Charles Cagaan on behalf of Mansur Real Estate. But, as it observed in its own Rule 56-1 statement of undisputed facts, the City was not a party to the agreement. We do not consider any facts Hinterberger attempts to offer on appeal about the City agreeing to the terms through its agent or Cagaan's privity to

the City. And because "[i]t goes without saying that a contract cannot bind a nonparty," *Northbound Grp., Inc. v. Norvax, Inc.,* 795 F.3d 647, 650 (7th Cir. 2015), the summary judgment record cannot be said to reveal a factual dispute.

For these reasons, we AFFIRM.