In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-1761

MONICA L. RONGERE,

*Plaintiff-Appellant*,

*v.*

CITY OF ROCKFORD,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:19-cv-50133 — **Philip G. Reinhard**, *Judge*.

———————————

ARGUED FEBRUARY 5, 2024 — DECIDED APRIL 30, 2024

———————————

Before ROVNER, BRENNAN, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Monica Rongere worked for the City of Rockford as Diversity Procurement Officer, though she often had other responsibilities beyond that role. On a few occasions, Rongere expressed to her supervisors that she felt overworked and underpaid, particularly compared to her male colleagues. Her supervisors, however, believed Rongere was failing to meet performance expectations. Ultimately, the City terminated Rongere's employment, citing her

performance issues. Not convinced by the City's justification, Rongere sued the City under the Equal Pay Act, Title VII of the Civil Rights Act of 1964, the Illinois Human Rights Act, the Illinois Whistleblower Act, and Illinois common law, bringing equal pay, sex discrimination, hostile work environment, and retaliation claims. At summary judgment, the district court ruled for the City on the EPA, Title VII, and IHRA claims and relinquished jurisdiction over the remaining state-law claims. Rongere appealed. Because Rongere does not identify adequate comparators for her equal pay and sex discrimination claims, does not show that she engaged in protected activity based on an objectively reasonable belief for her retaliation claim, does not present sufficient evidence of a hostile work environment, and does not explain how the district court abused its discretion in relinquishing jurisdiction over the remaining claims, we affirm.

I

Although we ordinarily take the facts in the light most favorable to the party opposing summary judgment, in this case, as we discuss further below, the district court rejected many of Monica Rongere's facts because of violations of Local Rule 56.1 regarding how a party opposing summary judgment must respond to the movant. We therefore proceed based on the district court's account of the facts.

In 2016, Rongere began working for the City of Rockford, Illinois, as Diversity Procurement Officer. In her role, Rongere oversaw the City's women- and minority-owned business enterprise program. Her duties included connecting with minority business owners in the community, encouraging them to bid on City projects, monitoring vendor wages, and ensuring compliance with federal and state wage laws. Nicholas

Meyer, the City's Legal Director, served as Rongere's direct supervisor. Rongere also worked with the City's mayor, Thomas McNamara.

The City informed Rongere when it hired her that, within about six months, her role would organically transition to Citywide Grant Officer. Indeed, within a few days of starting, she received a box of grant documents to manage and review, and her supervisors acknowledged the expansion of Rongere's duties to cover overall contract compliance. Ultimately, however, Rongere retained the title of Diversity Procurement Officer for her entire employment with the City. For her part, Rongere periodically expressed to Meyer that she should be paid more and that she did substantially more work than her role required. Additionally, Rongere told her supervisors that she believed she was paid the same or less than her male counterparts despite shouldering a heavier workload. However, she admits that she did not actually know her colleagues' salaries while she worked for the City.

Rongere identified Michael Hakanson and Karl Franzen as male colleagues who were compensated more than she was despite working substantially less. According to Rongere, Hakanson and Franzen were both "senior managers" just like she was. More specifically, Hakanson served as Land Transaction Officer. In that role, Hakanson managed real estate transactions, inspected properties, negotiated sales, conducted title searches, and prepared miscellaneous real estate documents. Hakanson's salary equaled Rongere's salary throughout her employment. Franzen, who did earn more than Rongere, started with the City as Economic Development Coordinator. His duties included managing the City's economic development programs, helping retain and expand

existing businesses, and seeking out new businesses for the City.

Over time, Rongere began to fall short of the City's expectations. For example, in the fall of 2017, the City planned a meeting with women- and minority-owned businesses to receive feedback on the business enterprise program. Rongere unexpectedly did not run the meeting, and Mayor McNamara had to step in, much to his dissatisfaction. He voiced his displeasure to Meyer, who agreed that Rongere did not manage the meeting properly. While Meyer did not directly discipline Rongere for her performance at the meeting, he explained to her that she would need to take the lead at the next one. Yet, due to a lack of communication and poor management, no subsequent meeting ever took place, again, to Mayor McNamara's disappointment. Meyer also grew frustrated with Rongere's communication style, particularly when she raised concerns about certain projects but then failed to follow up on them, thus leaving problems unresolved.

Rongere viewed things differently. In her opinion, it was the poor communication and workplace conduct of her supervisors and colleagues that was unprofessional and inefficient. For instance, Rongere testified that male colleagues talked down to her, ignored her, left her out of meetings, and kept her out of making important decisions. Further, she was not allowed to attend certain work conferences, unlike her male colleagues. And she had to keep track of her paid time off and complete her own administrative tasks while her male colleagues did not.

Rongere's relationship with the City reached its boiling point in June 2018, when Rongere met with Meyer and reiterated her complaints about her unequal treatment. Two days

later, Meyer met with Rongere again and informed her that the City was terminating her employment based on job performance issues. Meyer sent Rongere a letter stating the same. The letter was the first written notification from the City that she failed to meet performance standards.

Rongere, unconvinced by the City's reasoning, instead believed her termination stemmed from her complaints. Accordingly, she sued the City and brought the following claims: (1) equal pay and retaliation claims under the Equal Pay Act, 29 U.S.C. § 206(d); (2) sex discrimination, retaliation, and hostile work environment claims under Title VII, 42 U.S.C. §§ 2000e et seq., and the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.; (3) a retaliation claim under the Illinois Whistleblower Act, 740 ILCS 174/1 et seq.; and (4) an Illinois common law retaliatory discharge claim.

At the conclusion of discovery, the City moved for summary judgment on all claims. The district court first noted that Rongere failed to properly dispute the City's statement of material facts in violation of Local Rule 56.1. It therefore deemed several of the City's factual statements admitted. The court then ruled for the City on the EPA, IHRA, and Title VII claims, but it relinquished its jurisdiction over the remaining Illinois Whistleblower Act and common law retaliatory discharge claims. This timely appeal followed.

II

As a preliminary matter, Rongere challenges the district court's conclusion that she violated Local Rule 56.1. Local Rule 56.1 explains how a party opposing summary judgment must respond to the movant's statement of facts: "A response may not set forth any new facts, meaning facts that are not

fairly responsive to the asserted fact to which the response is made." N.D. Ill. Loc. R. 56.1(e)(2). "[D]istrict courts may require strict compliance with their local rules—a point we have recognized time and again." *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020). We review their enforcement for an abuse of discretion, and further give a district court's interpretation of its local rules "considerable weight." *Id.*

A review of Rongere's responses to the City's statement of material facts leads us to conclude that the district court did not abuse its discretion. Most of Rongere's responses did not address the City's statements and instead articulated wholly irrelevant and argumentative positions about her unfair workload and treatment. As an example, consider paragraph 13 in the City's statement of material facts, which the district court deemed admitted:

> During the course of Plaintiff's employment, Michael Hakanson held the position of Land Transaction Officer for the City. … The qualifications and distinguishing features for the position of Land Transaction Officer for the City are contained in the job description for that position.

In response, Rongere disputed paragraph 13 by stating, "Plaintiff was working much more than Hakansan [sic] and Franzen and she was being paid for one position when she was being made to fill two." But the City's factual statement had nothing to do with how much Hakanson worked compared to Rongere, nor did it oppose Rongere's assertion that she effectively worked two positions. Rongere's response thus set forth "new facts" not "fairly responsive" to the City's assertions. The district court acted well within its discretion

to find the response, and many like it, deficient and in violation of Local Rule 56.1.

In the few instances where Rongere identifies statements that she may have properly disputed under Local Rule 56.1, she altogether fails to explain how those factual disputes would have changed the district court's summary judgment ruling. See *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (noting that a party seeking to set a judgment aside because of an erroneous ruling carries the burden of showing prejudice); Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). For example, Rongere spends considerable time discussing paragraphs 5 through 8 of the City's statement of material facts. Her main objection to those statements is their general assertion that her "role as the Diversity Procurement Officer was never expanded." Rongere disputes that contention with evidence that the City divided her job into two separate roles following her termination. But even if that dispute complied with Local Rule 56.1, Rongere fails to show how it would have changed the district court's summary judgment analysis, merely stating in conclusory fashion that the factual dispute is "critical" to her EPA and Title VII claims. Indeed, as will be evident below, the facts Rongere disputes have no bearing on the resolution of her claims.

The district court did not abuse its discretion in finding that Rongere's responses to the City's statement of material facts violated Local Rule 56.1. At most, any error by the district court was harmless. See *Stanciel v. Gramley*, 267 F.3d 575, 579–80 (7th Cir. 2001) (noting that any error caused by the district court's invocation of a local rule did not affect Stanciel's substantial rights and was therefore harmless).

## III

Rongere challenges the district court's summary judgment ruling on her EPA, IHRA, and Title VII claims. We review a summary judgment order de novo, construing the record in the light most favorable to the nonmovant and drawing all reasonable inferences in her favor. *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020).

## A

We first turn to Rongere's equal pay claim. To demonstrate a prima facie case under the EPA, a plaintiff must establish "(1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions." *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 912–13 (7th Cir. 2002) (quotation omitted). Under the second element, the plaintiff must show that the jobs being compared are "substantially equal" based on job performance and content rather than job titles, classifications, or descriptions. *Id.* at 913. Simply, the plaintiff must show a "common core of tasks" that makes a significant portion of the jobs "identical." *Jaburek v. Foxx*, 813 F.3d 626, 632 (7th Cir. 2016) (quotation omitted).

Rongere cannot show that she and her comparators, Hakanson and Franzen, had substantially equal jobs for the City. The only evidence she presents is that all three employees held "senior manager" roles. But a job title is not enough. Rongere's job in substance, through her day-to-day tasks and duties, differed considerably from the jobs of Hakanson and Franzen. Rongere, as Diversity Procurement Officer (and, accepting her assertion that she effectively worked two roles, as

Citywide Grant Officer), oversaw community outreach to diverse businesses and reviewed grant applications. Hakanson, as Land Transaction Officer, managed real estate transactions, negotiations, and inspections. And Franzen, as Economic Development Coordinator, organized and implemented the City's economic development programs to retain existing businesses and seek out new ones. Rongere does not dispute the core duties of her comparators' roles. In fact, she all but concedes her claim, acknowledging in briefing that the senior managers are all responsible for different departments and that "the actual work is different." That ends our inquiry. Without proper comparators, Rongere's equal pay claim cannot survive summary judgment.

B

Rongere next seeks reversal on her Title VII and IHRA sex discrimination claims. These claims proceed under nearly identical standards, so we address them together. See *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016). Rongere brings her sex discrimination claims under the *McDonnell Douglas* burden-shifting framework. See generally *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a prima facie case of discrimination. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005). To establish a prima facie case, a plaintiff must show that "(1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated male employees." *Id.* If the plaintiff meets her burden, the defendant must provide a nondiscriminatory reason for the adverse action. Then, the burden shifts back to

the plaintiff to prove that the proffered reasons were mere pretext. *Id.*

The district court granted summary judgment to the City for two alternative reasons: (1) Rongere failed to identify similarly situated employees for her prima facie case, and (2) she did not prove that the City's reasons for her termination were pretextual. While Rongere wrestles with the district court's second reason on appeal, she ignores the first in her opening brief (though she addresses it in her reply). This issue may have been waived, see *Maher v. City of Chicago*, 547 F.3d 817, 821 (7th Cir. 2008) ("In situations in which there is one or more alternative holdings on an issue, we have stated that failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.") (cleaned up), but if not, we agree with the district court's resolution of the question.

Typically, when identifying similarly situated employees, a plaintiff "must at least show that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (quotation omitted). Rongere falls short on the third prong. She had to show that a male employee with a similar performance history as her did not lose his job. See *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016) ("An employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated."). She did not. The record does not establish that Hakanson, Franzen, or any other male employee fell short of job expectations yet evaded

termination. In fact, Rongere has not pointed to any evidence of subpar work performed by any other colleague.

Rongere instead reiterates a point she has stressed throughout her case: Hakanson and Franzen worked fewer hours than her and did not have to perform the same administrative and trivial tasks that she did, despite earning more money. But this argument cannot save her claim. First, Rongere never characterized her overwork as an adverse employment action for Title VII purposes. And second, even if she had, her sex discrimination claim would still fail under an overwork theory for the same reason as her equal pay claim: Hakanson and Franzen's jobs materially differed from hers, so even if they were treated more favorably by having to work less, they would not qualify as similarly situated employees.

While the similarly situated inquiry is flexible, it is meant to eliminate confounding explanatory variables between employees such that a reasonable jury can infer discriminatory animus. See *Coleman*, 667 F.3d at 841, 846. By not articulating how other male employees were "directly comparable" to her "in all material respects," *id.* at 846 (quotation omitted), Rongere did not eliminate those confounding variables that could explain away her termination or her comparatively higher workload; she therefore failed to meet her prima facie burden. In turn, we need not address her arguments regarding pretext.

C

Rongere fares no better on her retaliation claims. She brought her claims under Title VII, the EPA, and the IHRA, which are all analyzed under the same framework. See *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382–83 (7th Cir.

2016) (Title VII and IHRA); *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005) (Title VII and EPA). A plaintiff must prove three elements for a retaliation claim: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity. *Miller v. Polaris Labs., LLC*, 797 F.3d 486, 492 (7th Cir. 2015). To satisfy the first prong, the plaintiff must show that she held an objectively reasonable belief that the action she opposed violated the law. *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752–53 (7th Cir. 2002). The district court granted summary judgment to the City based on this requirement, concluding that no reasonable jury could find that Rongere reasonably believed that she was paid less than her male counterparts or was otherwise discriminated against based on her sex. We agree.

Rongere's principal complaint to the City was her belief that she was paid less than her male coworkers in violation of the EPA and Title VII. Of course, as Rongere notes, a retaliation claim does not fail simply because, as we have concluded here, the underlying conduct of the employer did not violate the relevant statute as a matter of law. See *id.* at 752. However, the record must still support an objectively reasonable belief that the employer violated the law by paying male employees more than female employees. Here, Rongere has not identified evidence in the record supporting such a reasonable belief. As discussed above, Rongere admits that her comparators' jobs differed as to the actual work required, so she cannot have reasonably believed that her employer paid male employees more than female employees for the same work. Even more fatal to her argument, Rongere testified that she did not know the salaries of other senior managers while she worked for the City. We therefore have no trouble concluding that

Rongere did not hold an objectively reasonable belief that the City paid male employees more than female employees for the same work.

Rongere also invokes her overwork theory once more, stressing that she effectively worked two positions while her male colleagues only worked one, performed additional administrative tasks, and consequently could not take vacation time like her male colleagues. But overwork alone is not actionable under the EPA, Title VII, or the IHRA. Rather, a "prohibited motive" is required. See *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). To support the existence of an objectively reasonable belief, Rongere needed at least some evidence showing that her comparatively higher workload might have been based on her sex, but the record lacks such facts. Cf. *Fine*, 305 F.3d at 752 (concluding that the plaintiff had an objectively reasonable belief based on a substantial and detailed record that included coworkers' shared belief that female employees were demoted based on their sex). Working longer hours and performing more administrative tasks than male colleagues with completely different jobs does not, without more, support an objectively reasonable belief that the differential treatment stemmed from sex discrimination. And as far as her lack of vacation time, Rongere herself chose not to take it due to her workload, and the City paid out the unused vacation time upon her termination. That fact offers nothing to support an inferential leap toward discriminatory conduct.

Finally, Rongere notes that she met with her supervisors multiple times and reiterated her belief that the City treated male employees more favorably than her. She also emphasizes the suspicious timing of her termination, mere days after

making her most direct complaints to Meyer. But while we do not doubt the sincerity of Rongere's belief, without evidence of a discriminatory motive, that sincerity cannot transform her belief into an objectively reasonable one. See *id.* And as to the suspicious timing of her termination, that fact is indeed relevant support for causation, see *Coleman*, 667 F.3d at 860 (noting suspicious timing as circumstantial evidence relevant to proving causation), but it has no bearing on whether her beliefs of sex discrimination and unequal pay were objectively reasonable. Therefore, Rongere's retaliation claims cannot survive summary judgment.

D

Finally, Rongere brings hostile work environment claims under Title VII and the IHRA. As in previous sections, the applicable Title VII and IHRA standards are the same. *Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 714 (7th Cir. 2021). To survive summary judgment on a hostile work environment claim, a plaintiff must show: (1) her work environment was objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016). We consider hostile work environment claims based on the totality of the circumstances. *Id.* "Deciding whether a work environment is hostile requires consideration of factors like the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Id.* To qualify as severe or pervasive under the third prong, the conduct must be "extreme" considering all

the circumstances. *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 600 (7th Cir. 2021).

Rongere's evidence falls well short of a hostile work environment claim. Rongere spends the bulk of her argument emphasizing that hostile work environment claims typically involve fact-intensive questions to be decided by a jury. That is true, but not when the undisputed facts show nothing approaching severe or pervasive conduct such that a reasonable jury would find in her favor. Rongere's evidence can be summarized as follows: (1) After making complaints about her pay and treatment, her supervisors would not return her emails or acknowledge her presence; (2) she had to work much longer hours and much harder than her colleagues; and (3) she was spoken down to, ignored, and kept out of decisions. While these facts might support a frustrating work environment, they do not support a hostile one under the law. Aside from testifying generally that she "was talked down to," ignored, and "condescended to by males," Rongere does not identify specific statements or actions that could serve as evidence of the severe or pervasive conduct she must show. And the rest of her complaints are largely "about overwork rather than about a place permeated with intimidation, ridicule, and insult. Such frustrations do not support a hostile work environment claim … ." *Boss*, 816 F.3d at 920.

IV

Having concluded that the district court properly granted summary judgment, we must briefly address whether the court abused its discretion in relinquishing jurisdiction over Rongere's remaining state-law claims. *RWJ Mgmt. Co. v. BP Prods. N.A., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) **"When fed-**eral claims drop out of the case, leaving only state-law claims,

the district court has broad discretion to decide whether to keep the case or relinquish supplemental jurisdiction over the state-law claims." *RWJ Mgmt. Co.*, 672 F.3d at 478. In determining whether to relinquish jurisdiction, a district court should weigh the factors of judicial economy, convenience, fairness, and comity. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). "A general presumption in favor of relinquishment applies and is particularly strong where … the state-law claims are complex and raise unsettled legal issues." *RWJ Mgmt.*, 672 F.3d at 478.

The district court relinquished jurisdiction over the remaining Illinois Whistleblower Act claim and the related retaliatory discharge claim because they involved ambiguous and unsettled issues of statutory interpretation. Specifically, while the district court acknowledged that the judicial economy factor favored retaining jurisdiction, it observed that the unique facts of the case—where a whistleblower worked for the government—favored relinquishing jurisdiction to allow Illinois courts to determine how the Illinois Whistleblower Act might apply to such facts. Rongere does not contest that analysis on appeal, and we will not fashion arguments on her behalf. See *Hall v. Flannery*, 840 F.3d 922, 927 (7th Cir. 2016) ("[W]e are not in the business of formulating arguments for the parties.") (quotation omitted). The district court acted within its discretion in relinquishing jurisdiction over the remaining claims.

AFFIRMED