THERESIA HARRIS, APPELLANT, V. MISTY LOUNGE, INC., A
NEBRASKA CORPORATION, APPELLEE.
371 N.W.2d 688

Filed August 9, 1985.   No. 84-436.

Kirk E. Naylor, Jr., for appellant.

Richard H. Williams of Ryan & Williams, P.C., for appellee.

BOSLAUGH, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

GRANT, J.

Theresia Harris appeals from an order of the district court for Lancaster County. The district court had reversed a finding by the Nebraska Equal Opportunity Commission (hereinafter Commission) that appellant had been wrongfully discharged by appellee, Misty Lounge, Inc. We affirm the district court's order.

Appellant was hired by Misty in September of 1980 as kitchen manager at Misty's Edgewood location, which was just in the process of opening. She had been employed for the previous 18 years by a different restaurant as head cook and kitchen manager. Appellant continued her employment with Misty until her discharge on March 29, 1982.

It is clear from the evidence that appellant started working for Misty with the hope for advancement within the organization. All parties agreed that, at least at the beginning of her term of employment, appellant performed her duties admirably. She received two substantial pay increases during her first year with appellee.

In May of 1981 Mark Read was named as manager of Misty's Edgewood location. In June of that year Steven Berry, who had been employed by appellee since February of 1980 as a bartender, was promoted to assistant manager. On August 18, 1981, appellant filed a complaint against Misty with the Commission, alleging discrimination in failure to promote her to one of the jobs. Subsequently, on November 12, 1982, the Commission determined that there was no reasonable cause to believe Misty had discriminated against appellant in that case.

The immediate circumstances preceding appellant's discharge were testified to by appellant and Read. On March 27, 1982, a Saturday evening, appellant approached Read to discuss her displeasure with night cooks coming in early and standing around or eating at a time when the restaurant was trying to hold down labor costs. Read testified that the conversation got heated because appellant wanted to talk about her responsibilities at that time and he was too busy to do so. He told her to worry about the kitchen and that he would worry about labor costs. After a heated argument appellant walked out of Read's office.

Read reported the incident to William Leung, who was the general manager of Misty's three locations, who in turn reported it to Misty's co-owners, Grace and Bob Milton. After a discussion that evening the decision was made to discharge appellant, and Read was instructed to do so.

On the following Monday appellant returned to the restaurant to complain to Read about the language he had used to her on Saturday night. Read informed her of the decision to terminate her employment. Appellant testified that Read would not give her reasons for the termination. Read testified that she turned and walked out before he could explain the reasons. The complaint which is the basis of this action was subsequently filed by appellant with the Commission.

In its answer to the complaint Misty alleged that appellant's discharge was not in retaliation for her making the prior complaint but, rather, was based on a combination of reasons, including appellant's persistent insubordination and unsatisfactory work performance, and elimination of the kitchen manager position for economic reasons.

While it is clear that appellant's work performance was initially good, the testimony of Bob Milton, Read, Leung, and Berry indicated that her performance changed. Bob Milton testified that he started receiving complaints about appellant in the fall of 1981. While he was initially impressed with her performance, "she went downhill the last six months she was there."

Read related that toward the end of her employment, appellant was not adequately preparing food for the night crew. He had several conversations with her in this regard, but she told him she wanted the night cooks to do it. The problem was not alleviated. Berry began receiving complaints from the waitresses and night cooks concerning appellant in the summer of 1981. Leung also testified that he received complaints from the night cooks concerning the lack of adequate food preparation during appellant's last 2 or 3 months.

Leung further testified about his inability to communicate with appellant after Berry was named assistant manager. He began to receive reports from employees about appellant's complaining. Berry testified that, while he was still a bartender,

appellant complained to him about Read's performance. Appellant had discussions with other employees concerning Read's ability to manage the restaurant. Read also developed communication problems with appellant.

Friction developed between appellant and management at about the time of Berry's promotion. The atmosphere in the restaurant became tense and continued to worsen as time went on. Read attributed the friction to appellant's desire to be manager and disappointment in not being named to the position.

The evidence also clearly shows that from the time it opened Misty did not meet sales projections, falling short by over 25 percent, and lost money in its first 2 years. In an attempt to turn the business into a profitable operation, efforts were made to reduce controllable expenses. Food costs and payroll were the major targets. Some part-time employees were discharged, and others had their hours reduced. Employees were allowed to work little or no overtime. Appellant, who had been working 8 to 10 hours overtime per week, was displeased with the reduction in her hours.

Leung testified that by March of 1982 the employee staff had been trimmed as much as possible. He stated that the business was topheavy and that cuts would have to be made in management positions. Appellant's position, kitchen manager, had been created for her based on early sales predictions. It was felt that the position was unnecessary and that appellant's management duties could be handled by the restaurant manager. The argument on March 27, 1982, combined with the other three reasons to produce appellant's discharge.

We first note that the standard of review in the district court is de novo on the record. The district court may not vacate, modify, or set aside an order of the Commission unless "[t]he findings of the commission in support of such order are unreasonable or arbitrary or are not supported by a preponderance of the evidence." Neb. Rev. Stat. § 48-1120(3)(b) (Reissue 1984). With regard to our review, as stated in *Zalkins Peerless Co. v. Nebraska Equal Opp. Comm.*, 217 Neb. 289, 291, 348 N.W.2d 846, 848 (1984), "since no different statutory standard of review is provided for in the

Nebraska Fair Employment Practice Act, we are bound by the provisions of Neb. Rev. Stat. § 84-918 (Reissue 1981)." In *Haeffner v. State, ante* p. 560, 371 N.W.2d 658 (1985), we held that our review under Neb. Rev. Stat. § 84-918 (Reissue 1981) is de novo on the record. We review this case accordingly.

It is appellant's position that her employment with appellee was terminated in retaliation for her having filed an earlier complaint with the Commission. Such termination would be in violation of Neb. Rev. Stat. § 48-1114 (Reissue 1984), which forbids discrimination by an employer against an employee who has made a charge against the employer before the Commission. Appellant contends that the district court erred in finding that Misty had established legitimate, nondiscriminatory reasons for her discharge. We do not agree with appellant's position.

The analysis to be utilized in determining whether appellant was wrongfully discharged is set out in *Zalkins Peerless Co. v. Nebraska Equal Opp. Comm., supra* at 292, 348 N.W.2d at 849:

> First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802. Third, should the defendant carry the burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Appellant clearly satisfied the first requirement of this test. A showing by appellant that she was discharged following protected activities of which the employer was aware establishes a prima facie case of retaliatory dismissal. *Aguirre v. Chula Vista Sanitary Service*, 542 F.2d 779 (9th Cir. 1976). See, also, *Womack v. Munson*, 619 F.2d 1292 (8th Cir. 1980). The parties agree that appellant had filed a complaint with the Commission and that Misty knew it.

The second prong of the test places the burden upon Misty to

articulate some legitimate, nondiscriminatory reason for its discharge of appellant. Misty met this burden by advancing as justification for appellant's discharge her insubordination, her inadequate work performance, and the financial difficulties encountered by the restaurant. The record adequately substantiates these reasons.

Appellant contends that Misty did not satisfy the second prong. However, in making that argument appellant places a heavier burden on Misty than does the law. As stated in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981):

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. [Citation omitted.] It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.

See, also, *Zalkins Peerless Co. v. Nebraska Equal Opp. Comm., supra.* The burden placed on appellee is not a burden of persuasion but, rather, a burden of production. Appellee clearly satisfied the latter burden by articulating its three nondiscriminatory reasons for discharging appellant and offering proof thereof.

Since Misty rebutted the presumption created by establishment of appellant's prima facie case, our analysis must proceed to the third prong of the test. Appellee has the burden of proving "that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 256. On our review of the record we agree with the district court that appellant did not prove she was a victim of intentional discrimination by Misty nor that the justifications offered by Misty were a sham, or a pretext, or unworthy of credence. The district court's order is affirmed.

AFFIRMED.