LAWRENCE ROSE, APPELLANT, V. VICKERS PETROLEUM, APPELLEE.

546 N.W.2d 827

Filed April 30, 1996. No. A-94-394.

Jerold V. Fennell, of Domina & Copple, P.C., for appellant.

Michael T. Levy for appellee.

MILLER–LERMAN, Chief Judge, and IRWIN and MUES, Judges.

MILLER–LERMAN, Chief Judge.

Lawrence Rose appeals the order of the district court for Douglas County, which affirmed the final order of the Nebraska Equal Opportunity Commission (NEOC) dismissing Rose's complaint. In his complaint and at the hearing, Rose claimed that he was the victim of a retaliatory firing several days after he had complained to the operations manager of Vickers

Petroleum (Vickers) that a supervisor had made a racial slur against him. The recommended order of the hearing examiner, as adopted as the final order of the NEOC, concluded that Rose had not participated in protected activity and was not a protected person within the meaning of the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48–1101 et seq. (Reissue 1988 & Cum. Supp. 1990), and that "[e]ven if [Rose] had proved a prima facie case of discrimination by retaliation, [Vickers had] successfully articulated a reasonable non–discriminatory explanation for its decision to terminate [Rose] from its employment." Although we find that the hearing examiner misstated the law, and it appears that his misstatement was adopted by the NEOC and by the district court which affirmed the decision, we conclude that the recommended order and dismissal were supported by competent evidence, and, accordingly, we affirm.

## STATEMENT OF FACTS

Rose, an African–American, was employed with Vickers as a cashier at its 40th and Cuming Streets location in Omaha.

On March 7, 1991, Robert Settlemyer, the district manager, came to the station. According to Rose's testimony, Settlemyer looked at Rose, who was not in a Vickers uniform, and said, "Where's your smock at, boy?" There is some evidence that Settlemyer repeated this comment a second time. Rose testified that he ignored the remark because he knew the comment was being directed at him and because the term "boy" was "a polite way of calling me a nigger."

After Settlemyer left, Rose told his manager, Cenon Ortiz, that he was upset over Settlemyer's use of the racial slur and that he wanted to call the home office to complain.

The next day, Rose called Vickers' home office in Denver and spoke with Denise K. Beisel, the operations manager, to register a complaint. In accordance with Vickers' policy, Beisel then called the Equal Employment Opportunity Commission coordinator for Vickers.

Approximately on March 11, 1991, Settlemyer called Rose concerning the complaint and apologized. This call was in

response to Beisel's instruction to him to call Rose and apologize.

On March 25, 1991, Vickers fired Rose. This dismissal occurred after Rose called his employer twice that day to inform the employer that he would be late to work, evidently because Rose was working with the police in an effort to recover tires and rims stolen from Rose's car. Rose's supervisor, Rick Tangeman, attempted to find a replacement for Rose and, when he was unable to get coverage, directed Rose to report for work. Rose did not come in at 2 p.m. as scheduled, but showed up 3 hours later. Rose was fired upon his arrival. The firing was consistent with company policy to fire workers for insubordination, but not consistent with a policy that one could not terminate an employee without consulting another supervisor.

The record shows that Tangeman was assigned as manager of the 40th and Cuming Streets location 5 days before Rose's dismissal. Tangeman testified that prior to firing Rose, he was aware that Rose had complained about Settlemyer's remark.

Rose filed a complaint with the NEOC based on a claim of retaliatory termination. A hearing was conducted on January 11 and 12, 1993. Five witnesses testified live. Their testimony consumes about 230 pages. Twenty-seven exhibits were received in evidence. In addition, three witnesses appeared by deposition. A "Recommended Order and Decision" was issued on April 5, 1993, recommending dismissal of the complaint as noted above. The NEOC's final order adopting the recommendations over Rose's objection was filed May 21, 1993. Rose appealed the dismissal to the district court, which affirmed the order. This appeal followed.

## ASSIGNMENTS OF ERROR

Rose assigns the following three errors: (1) The NEOC erred in determining that Rose " 'did not participate in a protected activity' "; (2) the NEOC erred in not finding that Rose made a prima facie showing of discrimination by retaliation; and (3) the NEOC erred in failing to find that Vickers' proffered reason for Rose's discharge was not the true reason for the employment decision.

## STANDARD OF REVIEW

 Rose appealed the NEOC decision under the Administrative Procedure Act. See Neb. Rev. Stat. § 84-917 (Reissue 1994). When a petition seeking review of an agency's decision under the Administrative Procedure Act is filed in the district court on or after July 1, 1989, the review shall be conducted by the district court de novo on the record. § 84-917(5)(a). The judgment rendered or final order made by the district court may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Neb. Rev. Stat. § 84-918(3) (Cum. Supp. 1990); *Metro Renovation v. State*, 249 Neb. 337, 543 N.W.2d 715 (1996); *Bell Fed. Credit Union v. Christianson*, 244 Neb. 267, 505 N.W.2d 710 (1993); *Davis v. Wright*, 243 Neb. 931, 503 N.W.2d 814 (1993). An appellate court, in reviewing a judgment of the district court for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id*. See, also, *Ballard v. Nebraska Dept. of Soc. Servs.*, 2 Neb. App. 809, 515 N.W.2d 437 (1994).

## ANALYSIS

 The Nebraska Supreme Court has stated:

Because the NFEPA is patterned from that part of the Civil Rights Act of 1964 contained in 42 U.S.C. §§ 2000e et seq. (1976), it is appropriate to look to federal court decisions construing similar and parent federal legislation. See, *Richards v. Omaha Public Schools*, 194 Neb. 463, 232 N.W.2d 29 (1975); *Zalkins Peerless Co. v. Nebraska Equal Opp. Comm.*, [217 Neb.] 289, 348 N.W.2d 846 (1984).

*Airport Inn v. Nebraska Equal Opp. Comm.*, 217 Neb. 852, 856, 353 N.W.2d 727, 731 (1984). Accord, *City of Fort Calhoun v. Collins*, 243 Neb. 528, 500 N.W.2d 822 (1993); *Bluff's Vision Clinic v. Krzyzanowski, ante* p. 380, 543 N.W.2d 761 (1996).

 The well-known order and allocation of proof and burdens set forth in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), are applicable to discriminatory employment treatment

claims, as well as retaliatory claims. *Harris v. Misty Lounge, Inc.*, 220 Neb. 678, 371 N.W.2d 688 (1985). See, also, *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir. 1985). Thus, Rose must first prove to the fact finder by a preponderance of the evidence a prima facie case of retaliation. If Rose proves a prima facie case, Vickers has the burden to articulate a legitimate nondiscriminatory reason for the employment decision in order to rebut the inference of retaliation raised by Rose's prima facie claims. Once Vickers produces such a reason, Rose then has the burden to prove by a preponderance of the evidence that the legitimate reasons offered by Vickers were but a pretext for retaliation. See *Texas Dept. of Community Affairs v. Burdine, supra.* At all times, Rose retains the ultimate burden of persuading the fact finder that he has been the victim of intentional impermissible conduct. See *id.*

■ The U.S. Supreme Court in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993), heightened the employee's burden in discrimination cases. It is now incumbent upon an employee to prove not only falsity of the proffered reasons given by the employer, but also that discriminatory motive was the true reason for the discharge. *Id.* We note that the Nebraska Supreme Court recently adopted the *St. Mary's Honor Center* burdens in the context of a housing discrimination claim in *Ventura v. State*, 246 Neb. 116, 517 N.W.2d 368 (1994).

■ The trier of fact may rely on inferences rather than direct evidence of intentional acts, but intent must be proved by a preponderance of the evidence, whether direct, circumstantial, or otherwise. See, *Texas Dept. of Community Affairs v. Burdine, supra*; *Board of Trustees v. Sweeney*, 439 U.S. 24, 99 S. Ct. 295, 58 L. Ed. 2d 216 (1978); *Crawford v. Western Elec. Co., Inc.*, 614 F.2d 1300 (5th Cir. 1980).

It is important at the outset to note that Rose's claim is for alleged retaliatory discharge, not for racial discrimination based on the comment uttered by Settlemyer. Section 48–1114 of the NFEPA provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his or her

employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he or she (1) has opposed any practice made an unlawful employment practice by sections 48–1101 to 48–1125, (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under sections 48–1101 to 48–1125, or (3) has opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state.

Under § 48–1114, an individual who has opposed discriminatory employment practices is protected under § 48–1114(1). Thus, Rose's claim is for retaliation, and the issue before the fact finder was whether or not Vickers retaliated against Rose by firing him either because he had complained to headquarters about Settlemyer's comment or because he had otherwise opposed an unlawful practice.

In analyzing the evidence in a retaliation case, the courts have stated that the elements of a prima facie case for retaliation are that "the plaintiff must show (1) that [he or] she was engaging in a protected activity, (2) that [he or] she suffered an adverse employment decision, and (3) that there was a causal link between the protected activity and the adverse employment decision." *Ruggles v. California Polytechnic State University*, 797 F.2d 782, 785 (9th Cir. 1986). See, also, *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033 (2d Cir. 1993); *Rath v. Selection Research, Inc.*, 978 F.2d 1087 (8th Cir. 1992); *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28 (1st Cir. 1990); *Manoharan v. Columbia U. Col. of Phys. & Surgeons*, 842 F.2d 590 (2d Cir. 1988). Although there is authority to the contrary, the majority view is that an employee is not required to prove the merits of the underlying discrimination charge which forms the basis for the alleged retaliatory treatment so long as the employee possessed a good faith belief that the offensive conduct violated the law. *Cosgrove v. Sears, Roebuck & Co., supra*; *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304 (6th Cir. 1989); *Manoharan v. Columbia U. Col. of Phys. & Surgeons, supra*; *Womack v. Munson*, 619 F.2d 1292

(8th Cir. 1980), *cert. denied* 450 U.S. 979, 101 S. Ct. 1513, 67 L. Ed. 2d 814 (1981); *Pettway v. American Cast Iron Pipe Company*, 411 F.2d 998 (5th Cir. 1969); *James v. Runyon*, 843 F. Supp. 816 (N.D.N.Y. 1994); *Hulme v. Barrett*, 480 N.W.2d 40 (Iowa 1992). Thus, in *James v. Runyon, supra*, the trial court stated that a "finding of unlawful retaliation .. . . does not depend on the merits of the underlying discrimination complaint." 843 F. Supp. at 825. Elsewhere it has been stated that "employer retaliation even against those whose charges are unwarranted cannot be sanctioned." *Womack v. Munson*, 619 F.2d at 1298.

In his "Recommended Order and Decision," the hearing examiner concluded that Rose did not participate in a protected activity when he complained about Settlemyer's comment and was, therefore, not a protected person under the NFEPA. In his discussion, the hearing examiner includes a string of citations of authority composed of numerous cases which hold that an isolated racial slur by a coemployee does not amount to an unlawful employment practice. See, e.g., *Winfrey v. Metropolitan Utilities Dist.*, 467 F. Supp. 56 (D. Neb. 1979). The hearing examiner reasoned that "if there were no 'unlawful employment practice' then it would be improper to consider whether an employer's actions were discriminatory or not." Thus, the hearing examiner concluded that because Rose's complaint about Settlemyer's isolated racial remark would not succeed in establishing an unlawful employment practice, his claim based on retaliatory firing for having registered an unmeritorious complaint could not succeed. We do not agree.

■ As noted above, the law does not permit an employee's well-founded, albeit unsuccessful, complaint of racial discrimination to be used by an employer as an excuse to retaliate by firing the employee. The hearing examiner misapprehended the law when he concluded otherwise. Notwithstanding this conclusion, the examiner, nevertheless, considered the remainder of the evidence and elsewhere concluded that "[e]ven if [Rose] had proved a prima facie case of discrimination by retaliation, [Vickers] successfully articulated a reasonable non–discriminatory explanation for its

decision to terminate [Rose] from its employment." The hearing examiner further found:

> [Rose] failed to show by a preponderance of the evidence [Vickers'] explanation for his termination was mere pretext for discrimination by retaliation. [Vickers'] actions were, more than likely, motivated by valid reasons for [Rose's] termination rather than by intent to retaliate against [Rose] on account of his having allegedly engaged in any protected activities.

In its de novo consideration of the appeal, the district court stated that it had made a complete review of the record and that

> the Court finds that the decision of the hearing officer of the Equal Opportunity Commission should be and the same is hereby affirmed. The Court having found that said decision was supported by competent, material, and substantial evidence in view of the entire record as made, and said decision was not arbitrary or capricious.

We have reviewed this appeal for error on the record, as we must. Although the hearing examiner misapprehended the law, he went on to consider the evidence and concluded that Rose's claim of retaliation was not adequately proved. Specifically, he found that there was sufficient evidence of a legitimate reason for terminating Rose due to tardiness and other reasons and insufficient evidence that the explanations were pretextual. Thus, the hearing examiner found that Rose failed to prove causation between his complaint and subsequent discharge. The district court adopted this reasoning.

The record shows that Rose came into work 3 hours late on March 25, 1991, and was fired by an individual who, although aware of it, was not involved in the racial slur incident. There was other evidence that Rose had been late on other occasions. During Tangeman's first week working at the 40th and Cuming Streets station, Rose left after 1 hour due to illness. There were ongoing problems with cigarette counts and reported cash shortages at the station during Tangeman's first week. Rose presented evidence that his performance was generally satisfactory and that other employees who had been tardy were not fired.

It is for the finder of fact to weigh the evidence and resolve the conflicts that may be presented. It was for Rose to establish to the fact finder that in the absence of his reporting of Settlemyer's remark, he would not have been fired. Rose failed to prove to the fact finder the causal link between the protected activity and the adverse employment decision. See, *Ruggles v. California Polytechnic State University*, 797 F.2d 782 (9th Cir. 1986); *Muehlhausen v. Bath Iron Works*, 811 F. Supp. 15 (D. Me. 1993); *Triplett v. Electronic Data Systems (EDS)*, 710 F. Supp. 667 (W.D. Mich. 1989); *Tate v. Dravo Corp.*, 623 F. Supp. 1090 (W.D.N.C. 1985). See, also, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The hearing examiner concluded that even if Rose had demonstrated his prima facie case of retaliatory discharge, Vickers terminated Rose's employment for nondiscriminatory reasons and that Rose failed to prove that the reasons articulated by Vickers were pretextual in nature. There is competent evidence in the record to support these findings. In our review of this appeal for error on the record, we conclude that the district court, which reviewed the record de novo, did not err in finding that Rose's complaint was properly dismissed by the NEOC.

AFFIRMED.