Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/23/2020 09:14 AM CDT

Nathan Haffke, appellant, v. Signal 88, LLC,
a Delaware limited liability
company, appellee.

___ N.W.2d ___

Filed July 31, 2020.    No. S-19-667.

1. **Jury Instructions.** Whether jury instructions are correct is a question of law.
2. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
3. **Directed Verdict: Appeal and Error.** In reviewing a trial court's ruling on a motion for directed verdict, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.
4. **Directed Verdict: Evidence.** A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.
5. **Fair Employment Practices: Proof.** In order to show retaliation under the Nebraska Fair Employment Practice Act, a plaintiff must establish (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse action.
6. **Employer and Employee: Proof.** A plaintiff alleging he or she was subjected to retaliatory action based upon opposing or refusing to participate in an employer's practice or action which was unlawful only has to show a reasonable, good faith belief of the act's unlawfulness.
7. **Employer and Employee.** In order for a good faith belief that an employer's action was unlawful to be reasonable, the act believed to be unlawful must either in fact be unlawful or at least be of a type that is unlawful.

8. **Jury Instructions.** When evaluating whether a given instruction adequately states the law, the instruction should not be judged in artificial isolation but must be viewed in the context of the overall charge to the jury considered as a whole.

9. **Jury Instructions: Appeal and Error.** If the instructions given, taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal.

10. ____: ____. Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party.

11. **Courts.** It is appropriate to look to federal court decisions construing similar and parent federal legislation.

12. **Employer and Employee: Discrimination: Courts.** Employment discrimination laws have not vested in the courts the authority to sit as super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.

13. **Employer and Employee: Discrimination: Jury Instructions: Appeal and Error.** Instructing a jury on the business judgment rule in an employment discrimination case is not error.

14. **Employer and Employee: Discrimination: Proof.** In cases involving claims of employment discrimination, Nebraska courts recognize a burden-shifting analysis. First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry the burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

15. **Libel and Slander: Negligence.** A defamation claim has four elements: (1) a false and defamatory statement concerning the claimant, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

16. **Rules of the Supreme Court: Pleadings.** Nebraska's pleading rules require that certain enumerated defenses and any other matter constituting an avoidance or affirmative defense must be pled in a defendant's answer.

17. **Pleadings.** An affirmative defense raises a new matter which, assuming the allegations in the petition to be true, constitutes a defense to the merits of a claim asserted in the petition.

18. \_\_\_\_. An affirmative defense generally avoids, rather than negates, the plaintiff's prima facie case.

19. **Rules of the Supreme Court: Pleadings: Notice.** The Nebraska Court Rules of Pleading in Civil Actions, like the federal rules, have a liberal pleading requirement for both causes of action and affirmative defenses, but the touchstone is whether fair notice was provided.

20. **Appeal and Error.** In the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed.

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Affirmed.

Kelly K. Brandon, Aimee C. Bataillon, and Stephanie J. Costello, of Fiedler Law Firm, P.L.C., for appellant.

Ruth A. Horvatich, Aaron A. Clark, and Cody E. Brookhouser-Sisney, of McGrath North, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

This appeal concerns Nathan Haffke's termination of employment by Signal 88, LLC, which led to Haffke's claim of retaliation under the Nebraska Fair Employment Practice Act (NFEPA)[1] and defamation. The district court granted Signal 88 a directed verdict on Haffke's defamation claim, and a jury found Haffke failed to prove his retaliation claim. On appeal, Haffke challenges a jury instruction for retaliation that required Haffke to have opposed or refused to carry out a practice of Signal 88 "that is unlawful." Haffke also challenges the applicability of a jury instruction on the business judgment rule in an employment action. Finally, Haffke claims the district

---

[1] See Neb. Rev. Stat. §§ 48-1101 to 48-1126 (Reissue 2010 & Cum. Supp. 2016).

court should not have reached the issue of whether he suffi-
ciently pleaded or proved special damages on his defamation
claim when Signal 88 did not raise compliance with Neb. Rev.
Stat. § 25-840.01 (Reissue 2016) as an affirmative defense. For
the reasons set forth herein, we affirm.

BACKGROUND

Signal 88 is a security service franchisor and sells fran-
chises of mobile security services to business owners. As a
franchisor, Signal 88 is required to comply with the Federal
Trade Commission's franchise rules, including the preparation
of a franchise disclosure document (FDD) that is provided to
prospective franchisees as part of the sale process. Under item
19 of an FDD, if a franchisor is going to provide a potential
franchisee with a financial performance representation, such
representation is generally required to be disclosed in the
FDD. Haffke testified that Signal 88's FDD's at issue in this
case stated:

> Other than the information provided in this Item 19, we
> do not furnish or provide prospective franchisees any oral
> or written information concerning the actual or potential
> sales, cost, income or profits of a franchise business.
> Actual results vary from unit to unit. We cannot estimate
> the results of any particular franchise.

Haffke began working for Signal 88 in December 2014 as
vice president of franchise development. Haffke was respon-
sible for managing a team of contractors and promoting the
sale of security services.

Signal 88 terminated Haffke's employment in March 2016,
and the parties allege differing reasons for this termination.
Haffke claims he was terminated for alerting Signal 88 it was
engaging in unlawful transactions and refusing to participate in
those transactions. In his appellate brief, Haffke points specifi-
cally to two allegedly unlawful transactions: (1) a Signal 88
independent contractor providing a potential franchisee with
a business plan that included a profit-and-loss statement not

included in item 19 of the FDD, and (2) an expansion program in which Signal 88 engaged with members of an existing franchisee company to expand with different territory and pricing under a newly formed company and purchase the existing franchise without providing an updated FDD. Signal 88, in turn, alleges Haffke's employment was terminated due to poor performance, including his communication issues in the leading of his team, unsatisfactory sales performances, and stated disbelief in Signal 88's 5-year company plan.

As part of Haffke's termination from employment, Signal 88 provided a severance agreement and an independent contractor agreement to continue a relationship in which Haffke would sell franchises for Signal 88. Although Haffke initially signed both documents, he soon after revoked the severance agreement, alleging the termination was wrongful. A day after Haffke informed Signal 88 of his revocation of the severance agreement, Signal 88 also terminated the independent contractor agreement.

Haffke filed a claim with the Nebraska Equal Opportunity Commission in July 2016, alleging retaliation. Signal 88 amended its FDD to make the necessary disclosure of Haffke's employment action, and this amendment was included in a copy of the FDD issued April 19, 2017, which stated:

> *Haffke v. Signal 88, LLC - Neb 1-16/17-7-48152-S.* Nathan Haffke filed a charge of retaliation with the Nebraska Equal Opportunity Commission (NEOC) on or around July 27, 2016. In his Charge, Haffke contends that the Company retaliated against him after he made protected whistleblower complaints relating to the lawfulness of certain alleged Company activities. Haffke was, however, terminated from his employment due to his poor performance. The charge is currently in the investigation stage with the NEOC.

On July 12, 2017, Haffke sent Signal 88 a letter taking issue with the FDD's statement that Haffke was terminated from

employment "due to his poor performance." On August 2, Signal 88 revised the April FDD to state:

> *Haffke v. Signal 88, LLC - NEB 1-16/17-7-48152-S.* Nathan Haffke filed a charge of retaliation with the Nebraska Equal Opportunity Commission (NEOC) on or around July 27, 2016. In his Charge, Haffke contends that the Company retaliated against him after he made protected whistleblower complaints relating to the lawfulness of certain alleged Company activities. It is the Company's position that Haffke was separated from his employment for lawful reasons. The charge is currently in the investigation stage with the NEOC. Haffke seeks compensation for back pay and mental suffering.

Haffke filed a complaint with the district court in October 2017. Under the first count, Haffke claimed Signal 88 violated the NFEPA by retaliating against him for his whistleblower actions. Specifically, Haffke alleged Signal 88 impermissibly retaliated against him by terminating his employment and revoking the subcontractor agreement because he alerted Signal 88 to company actions he reasonably and in good faith believed were unlawful "violations of federal/state franchise law[,] Nebraska's Uniform Deceptive Trade Practices Act[,] and Nebraska's Consumer Protection Acts," as well as wiretapping laws.

Under the second count, Haffke claimed defamation extending from Signal 88's publication of the April FDD. Haffke argued the statement that he was "terminated from his employment due to his poor performance" was untrue, unprivileged, unlawful, and slanderous per se due to the implication that he was a poor performer and unfit to carry out employment duties. Haffke explained that "[u]pon learning of the defamatory disclosure, [Haffke] immediately sent a request to Signal 88 . . . pursuant to [§] 25-840.01 to retract its untrue statements contained within the FDD," but that "[a]t the time of this filing, the statement has not been retracted and Signal [88] has not released an amended FDD." Haffke alleged he was "damaged

in lost wages and income, lost fringe benefits, damages to his reputation, mental and emotional distress, humiliation, and future lost income."

Signal 88 filed an amended answer contesting Haffke's complaint. On the defamation claim, Signal 88 admitted Haffke had "requested that Signal 88 retract the statement [in the FDD] that he was terminated from his employment due to his poor performance" but denied the allegation that the statement had not been retracted and Signal 88 had not released an amended FDD. Additionally, Signal 88 listed various affirmative defenses in its answer, including that Signal 88 "has complied with all applicable statutes and regulations and, thus, . . . has not defamed [Haffke]" and that Haffke "did not suffer damages or harm attributable to the action or inaction of [Signal 88] as alleged in [Haffke's] complaint."

A jury trial was held in June 2019. At the close of evidence, Signal 88 moved for a directed verdict, which the district court denied as to the retaliation claim. Regarding defamation, the court determined that § 25-840.01 applied and that, as such, Haffke was required to plead or prove special damages. Because Haffke failed to plead or prove special damages, the court granted Signal 88 a directed verdict on the defamation claim.

The district court provided a jury instruction on the remaining retaliation claim. As applicable to the current appeal, jury instruction No. 8 stated, in relevant part:

Before the Plaintiff, Nathan Haffke, can recover against the Defendant, Signal 88, LLC, on each of his retaliation claims. Plaintiff must prove, by the greater weight of the evidence, each and all of the following:

1. That Plaintiff engaged in a protected activity by opposing or refusing to carry out a practice of Defendant that is unlawful under federal law or the laws of the State of Nebraska[;]

2. That Plaintiff was subjected to materially adverse action by Defendant;

3. That Defendant would not have subjected Plaintiff to the materially adverse action but for Plaintiff's protected activity.

As to the first requirement under instruction 8, jury instruction No. 9 further explained:

Protected activity includes reporting, complaining about, opposing or refusing to carry out a practice of Signal 88 that Nathan Haffke reasonably and in good faith believed to be unlawful under federal law or the laws of the State of Nebraska.

An employee is protected against retaliation for opposing or refusing to carry out unlawful activity even if the conduct complained of is not unlawful.

Jury instruction No. 12 instructed the jury regarding the business judgment rule and provided: "You may not return a verdict for the Plaintiff just because you might disagree with the Defendant's decision to terminate Plaintiff's employment and/or deny the independent contractor agreement or believe it to be harsh or unreasonable."

The matter was submitted to the jury. The jury entered a verdict in favor of Signal 88 and found that Haffke failed to prove his retaliation claim.

## ASSIGNMENTS OF ERROR

Haffke assigns, restated, that the district court erred in (1) giving instruction No. 8, because a protected activity in a retaliation claim only requires a reasonable and good faith belief that the underlying company action the employee opposed or refused to participate in was unlawful; (2) giving instruction No. 12 on the business judgment rule when it is inapplicable to an employment discrimination case and conflicts with the pretext standard; and (3) granting Signal 88 a directed verdict on the defamation claim and shifting the burden to Haffke to plead or prove special damages when Signal 88 failed to raise compliance with § 25-840.01 as an affirmative defense.

## STANDARD OF REVIEW

[1,2] Whether jury instructions are correct is a question of law.[2] An appellate court independently reviews questions of law decided by a lower court.[3]

[3,4] In reviewing a trial court's ruling on a motion for directed verdict, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.[4] A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.[5]

## ANALYSIS

### Jury Instruction No. 8

Under NFEPA, "It is the policy of [Nebraska] to foster the employment of all employable persons in the state on the basis of merit . . . and to safeguard their right to obtain and hold employment without discrimination . . . ."[6] Section 48-1114 provides in relevant part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his or her employees . . . because he or she . . . has opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state."

[5] In order to show retaliation under NFEPA, a plaintiff must establish (1) he or she engaged in protected conduct, (2) he or she was subjected to an adverse employment action,

---

[2] See *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

[3] *Id*.

[4] See *id*.

[5] *Id*.

[6] § 48-1101.

and (3) there was a causal connection between the protected conduct and the adverse action.[7]

[6,7] We have previously held that a plaintiff alleging he or she was subjected to retaliatory action based upon opposing or refusing to participate in an employer's practice or action which was unlawful only has to show a reasonable, good faith belief of the act's unlawfulness.[8] In order for such a belief to be reasonable, the act believed to be unlawful must either in fact be unlawful or at least be of a type that is unlawful.[9]

In challenging instruction No. 8, Haffke argues that the required element that he "engaged in a protected activity by opposing or refusing to carry out a practice of [Signal 88] that is unlawful" improperly stated the law. Haffke claims this requirement failed to explain that he only needed to establish a reasonable and good faith belief that Signal 88's actions were unlawful and instead imposed an additional burden on him to show Signal 88's actions were actually unlawful.

[8-10] When evaluating whether a given instruction adequately states the law, the instruction should not be judged in artificial isolation but must be viewed in the context of the overall charge to the jury considered as a whole.[10] If the instructions given, taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal.[11] Jury instructions are subject to the harmless error rule, and an erroneous jury instruction

---

[7] See *McPherson v. City of Scottsbluff*, 303 Neb. 765, 931 N.W.2d 451 (2019).

[8] See, *Oldfield v. Nebraska Mach. Co.*, 296 Neb. 469, 894 N.W.2d 278 (2017); *Wolfe v. Becton Dickinson & Co.*, 266 Neb. 53, 662 N.W.2d 599 (2003).

[9] *Oldfield, supra* note 8; *Wolfe, supra* note 8.

[10] *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017).

[11] See *Rodriguez v. Surgical Assocs.*, 298 Neb. 573, 905 N.W.2d 247 (2018).

requires reversal only if the error adversely affects the substantial rights of the complaining party.[12]

Instruction No. 8 followed the wording of § 48-1114 in requiring that Haffke prove he engaged in a "protected activity" by opposing or refusing to carry out a practice "unlawful under federal law or the laws of the State of Nebraska." Instruction No. 9 further defined "[p]rotected activity" to include "opposing or refusing to carry out a practice of Signal 88 that . . . Haffke reasonably and in good faith believed to be unlawful under federal law or the laws of the State of Nebraska" and clarified that "[a]n employee is protected against retaliation for opposing or refusing to carry out unlawful activity even if the conduct complained of is not unlawful."

These instructions provide the required element that Haffke engaged in a protected activity, that such protected activity could include opposing or refusing to carry out an unlawful practice, and that an unlawful practice could include an act Haffke reasonably and in good faith believed to be unlawful without needing to actually be unlawful. We find, when read together, instructions Nos. 8 and 9 correctly state the required elements of the claimed retaliation under § 48-1114.

We disagree with Haffke's contention that instruction No. 8 is misleading by requiring actual unlawfulness when instruction No. 9 only requires a reasonable and in good faith belief of unlawfulness. Instruction No. 8 follows the wording of § 48-1114 and defines a protected activity to include opposing a company's unlawful actions. Instruction No. 9 clarifies that unlawful actions may include actions which the employee reasonably and in good faith believes to be unlawful, but which do not actually violate the law. These instructions are not contradictory nor misleading. Instead, they are accurate statements and explanations of the law.

Because instruction No. 8, when read together with the rest of the instructions, was a correct statement of the law and

---

[12] *Id.*

was not misleading, there is no prejudicial error necessitating a reversal. The district court did not err in giving instruction No. 8 to the jury.

### JURY INSTRUCTION NO. 12

Haffke next assigns that the district court erred in giving instruction No. 12, because it instructed the jury regarding the business judgment rule. More specifically, Haffke contends that the business judgment rule does not apply to employment discrimination cases and that instruction No. 12 conflicts with the jury's ability to find Signal 88's purported reasons for Haffke's termination from employment and denial of the subcontractor agreement were pretext and to draw inferences therefrom.

Haffke argues that the statutory basis for the business judgment rule, and therefore instruction No. 12, is Neb. Rev. Stat. § 21-2,103 (Cum. Supp. 2016). Because § 21-2,103 directs that "[a] director shall not be liable to the corporation or its shareholders" for any action when made in good faith and pursuant to a reasonable and adequately informed belief as to the best interests of the corporation, Haffke claims the Legislature intended to limit the business judgment rule's application to corporate governance cases. Haffke therefore argues the business judgment rule, as provided in instruction No. 12, does not apply to employment cases.

We agree that § 21-2,103 is inapplicable to the instant action. However, the language of instruction No. 12 does not address the application of § 21-2,103. Instruction No. 12 does not concern a director's liability to its corporation or shareholders. Additionally, instruction No. 12 does not reduce or eliminate an employer's liability because an employer terminated an employee pursuant to a good faith, reasonable, and informed belief as to the best interests of the corporation. Instead, instruction No. 12 explains that the jury cannot grant Haffke a verdict simply because the jury finds the termination or denial of the subcontractor agreement harsh and unreasonable.

[11] NFEPA is patterned from that part of the Civil Rights Act of 1964 contained in 42 U.S.C. § 2000e et seq. (2012), and it is appropriate to look to federal court decisions construing similar and parent federal legislation.[13] As such, we note that numerous federal courts have long held that the employment discrimination laws have not vested in the federal courts the authority to sit as super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.[14]

The 11th Circuit has held that a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer."[15] "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."[16] Additionally, the Seventh Circuit has held that "[i]t is not the role of the court to determine whether an employer's expectations were fair, prudent, or reasonable."[17] "So long as its management decision was not a guise for a discriminatory purpose, we must respect that decision."[18] However, at least one circuit court has recognized that an employer's business judgment is not an absolute defense to unlawful discrimination.[19]

---

[13] *Hartley v. Metropolitan Util. Dist.*, 294 Neb. 870, 885 N.W.2d 675 (2016).

[14] *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771 (8th Cir. 1995). See, *Boss v. Castro*, 816 F.3d 910 (7th Cir. 2016); *Ya-Chen Chen v. City University of New York*, 805 F.3d 59 (2d Cir. 2015); *Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000); *Verniero v. Air Force Academy Sch. Dist. No. 20*, 705 F.2d 388 (10th Cir. 1983).

[15] *Chapman, supra* note 14, 229 F.3d at 1030.

[16] *Id*.

[17] *Boss, supra* note 14, 816 F.3d at 917.

[18] *Id*.

[19] *Wexler v. White's Furniture, Inc.*, 317 F.3d 564 (6th Cir. 2003).

These propositions have translated into courts' determining that employers have the right to have juries instructed on the business judgment rule in employment discrimination cases and that such instructions do not prejudice the employee.[20] In fact, the Eighth Circuit has held that in employment discrimination cases, a business judgment instruction is "'crucial to a fair presentation of the case.'"[21]

The Nebraska Court of Appeals, in a memorandum opinion, has also noted that employment discrimination laws have not vested in the courts the authority "'"to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."'"[22]

Contrary to the Civil Rights Act of 1964 as interpreted by the described federal courts, Haffke contends that the Nebraska Legislature limited application of the business judgment rule in its enactment of NFEPA. In support of this argument, Haffke compares NFEPA to the County Civil Service Act and cites *Blakely v. Lancaster County*,[23] wherein we found a county's business judgment authority was limited by statutory requirements and rules adopted by the county for appointing employees.

In *Blakely*, a county employee contended that the county denied him an opportunity to fairly compete for job vacancies because the county failed to properly comply with the County

---

[20] See, *Julian v. City of Houston, Tex.*, 314 F.3d 721 (5th Cir. 2002); *Kelley v. Airborne Freight Corp.*, 140 F.3d 335 (1st Cir. 1998); *Walker v. AT & T Technologies*, 995 F.2d 846 (8th Cir. 1993); *Hancock v. Washington Hospital Center*, 13 F. Supp. 3d 1 (D.D.C. 2014).

[21] *Stemmons v. Missouri Dept. of Corrections*, 82 F.3d 817, 819 (8th Cir. 1996), quoting *Walker, supra* note 20.

[22] *Stevens v. County of Lancaster*, No. A-18-003, 2019 WL 2755097 at *10 (Neb. App. July 2, 2019) (selected for posting to court website), quoting *Bone v. G4S Youth Services, LLC*, 686 F.3d 948 (8th Cir. 2012), quoting *Hutson, supra* note 14.

[23] *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012).

Civil Service Act. In response to the county's argument that no one had the authority "'to sit as a super personnel department reviewing the business judgments made . . . when hiring personnel,'" this court held that by passing the County Civil Service Act, "the Legislature has limited those 'business judgments' [and that it was] a court's duty to enforce those statutory requirements."[24]

However, Haffke has pointed to no statutory or regulatory requirement or limitation which would have limited Signal 88's business judgment authority to terminate his employment or deny his subcontractor agreement, unlike the statutes involved in *Blakely*. Contrary to Haffke's argument, *Blakely* did not stand for the proposition that employment decisions are never subject to a business' judgment. The statutes and rules involved in *Blakely* expressly imposed procedural requirements and limited the ability of the county as to its consideration of certain employment decisions. Because we find no such limiting statutes or rules are at issue here, *Blakely* and its analysis of the County Civil Service Act do not apply to Haffke's retaliation claim under NFEPA.

[12,13] In line with the described federal courts and the Nebraska Court of Appeals, we too now hold that employment discrimination laws have not vested in the Nebraska courts the authority to sit as super personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination. We further hold that instructing a jury on the business judgment rule in an employment discrimination case is not error when the evidence warrants such an instruction.

Haffke also claims instruction No. 12 misled the jury and inhibited its ability to consider and make inferences that Signal 88's purported reasons for termination of his employment and denial of the subcontract agreement were pretexts.

---

[24] *Id*. at 673, 825 N.W.2d at 161-62.

Haffke argues this instruction contradicts the pretext standard provided by instructions Nos. 10 and 11.

[14] In cases involving claims of employment discrimination, this court has recognized the burden-shifting analysis which originated in *McDonnell Douglas Corp. v. Green*.[25] First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination.[26] Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.[27] Third, should the defendant carry the burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.[28]

Because Haffke articulated a showing that he was discharged following protected activities of which the employer was aware, he established a prima facie case of retaliatory dismissal. As a result, the burden shifted to Signal 88 to show a legitimate, nondiscriminatory justification for discharging Haffke. Signal 88 met this burden by advancing as justification for Haffke's discharge his work performance issues. The record adequately substantiates these reasons. Therefore, the presumption of discrimination disappeared, requiring Haffke to prove that the proffered justification was merely a pretext for discrimination.

Instructions Nos. 10 and 11 address the jury's ability to consider whether Signal 88's reasoning was a pretext to hide retaliation. Specifically, these instructions explain:

---

[25] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See *Riesen v. Irwin Indus. Tool Co.*, 272 Neb. 41, 717 N.W.2d 907 (2006).

[26] *Riesen, supra* note 25; *Harris v. Misty Lounge, Inc.*, 220 Neb. 678, 371 N.W.2d 688 (1985).

[27] *Id.*

[28] *Id.*

You may find Defendant would not have [terminated or denied the independent contractor agreement] "but for" Plaintiff's opposition to or refusal to carry out an unlawful practice of Defendant, if it has been proved that the Defendant's stated reasons for its decision[s] to [terminate the Plaintiff's employment or deny the independent contractor agreement] are not the real reasons, but are a pretext to hide retaliation.

Instruction No. 12 does not conflict with instructions Nos. 10 and 11 and does not limit the jury's ability to find Signal 88's purported reasons were pretexts to hide its real retaliatory reasons. Instruction No. 12 explains that the jury cannot find retaliation simply because it disagrees with Signal 88's decision or finds it harsh or unreasonable. It does not address the possibility that the jury does not believe Signal 88's purported reasons were the real reasons. Instead, instructions Nos. 10 and 11 properly instruct that should the jury determine Signal 88's reasons were pretexts to hide retaliation, the jury could make inferences from that finding and determine Haffke's opposition or refusal to carry out Signal 88's allegedly unlawful business practices was the cause of Haffke's termination from employment or Signal 88's denial of the subcontractor agreement.

We also find instruction No. 12 did not interfere with the jury's ability to draw inferences if it found termination or denial of the subcontractor agreement was harsh or unreasonable when compared to Signal 88's purported reasoning. As stated, the jury was properly instructed by instructions Nos. 10 and 11 that it could find Signal 88's offered reasons were not the real reasons but pretexts to hide retaliation. Additionally, instructions Nos. 1 and 4 explained that the parties' arguments may have been drawn from legitimate deductions and inferences from the evidence and that the jury had the ability to find facts based upon logical inferences. Instruction No. 12 did not contradict these instructions and prohibit such inferences from being made.

Instruction No. 12, when read together with the rest of the instructions, correctly states that the jury could not find retaliation simply because it disagreed with Signal 88's purported reasons or found them harsh or unreasonable. Instruction No. 12 did not restrict the jury's ability to draw logical inferences from evidence presented that the termination or denial of the subcontract agreement was harsh or unreasonable and did not restrict the jury's ability to find the purported reasons were not the real reasons but were pretexts for retaliation under instructions Nos. 10 and 11. The instructions given, taken as a whole, correctly state the law, are not misleading, and adequately cover the submitted issues. Therefore, there is no prejudicial error concerning instruction No. 12 and necessitating a reversal.[29]

Based upon the foregoing, this assignment of error is without merit.

## Defamation

[15] A defamation claim has four elements: (1) a false and defamatory statement concerning the claimant, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.[30]

Section 25-840.01 addresses this fourth element and states, in relevant part:

(1) In an action for damages for the publication of a libel . . . , the plaintiff shall recover no more than special damages unless correction was requested as herein provided and was not published. Within twenty days after knowledge of the publication, plaintiff shall have given each defendant a notice . . . specifying the statements claimed to be libelous . . . and specifically requesting

---

[29] See *Rodriguez, supra* note 11.

[30] *JB & Assocs. v. Nebraska Cancer Coalition*, 303 Neb. 855, 932 N.W.2d 71 (2019).

correction. Publication of a correction shall be made within three weeks after receipt of the request. It shall be made in substantially as conspicuous a manner as the original publication about which complaint was made. . . . The term special damages, as used in this section, shall include only such damages as plaintiff alleges and proves were suffered in respect to his or her property, business, trade, profession, or occupation as the direct and proximate result of the defendant's publication.

Haffke assigns the district court erred in granting Signal 88 a directed verdict on the defamation claim by shifting the burden to Haffke to plead or prove § 25-840.01. Haffke argues Signal 88 was required to raise compliance with § 25-840.01 as an affirmative defense but failed to do so. As such, Haffke claims he was not required to plead or prove special damages under § 25-840.01.

[16-19] Nebraska's pleading rules require that certain enumerated defenses "and any other matter constituting an avoidance or affirmative defense" must be pled in a defendant's answer.[31] An affirmative defense raises a new matter which, assuming the allegations in the petition to be true, constitutes a defense to the merits of a claim asserted in the petition.[32] It generally avoids, rather than negates, the plaintiff's prima facie case.[33] The Nebraska Court Rules of Pleading in Civil Actions, like the federal rules, have a liberal pleading requirement for both causes of action and affirmative defenses, but the touchstone is whether fair notice was provided.[34]

Here, the pleadings of the parties put the application of § 25-840.01 at issue and gave Haffke fair notice that Signal 88 was alleging its compliance with the statute. In his complaint,

---

[31] Neb. Ct. R. Pldg. § 6-1108(c).

[32] *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017).

[33] *Salem Grain Co. v. City of Falls City*, 302 Neb. 548, 924 N.W.2d 678 (2019).

[34] *Funk v. Lincoln-Lancaster Cty. Crime Stoppers*, 294 Neb. 715, 885 N.W.2d 1 (2016).

Haffke explicitly claimed Signal 88 failed to comply with § 25-840.01. The complaint alleged that "[u]pon learning of the defamatory disclosure, [Haffke] immediately sent a request to Signal 88 . . . pursuant to [§] 25-840.01 to retract its untrue statements contained within the FDD," but that "[a]t the time of this filing, the statement has not been retracted and Signal [88] has not released an amended FDD." Signal 88's answer admitted Haffke had "requested that Signal 88 retract the statement [in the FDD] that he was terminated from his employment due to his poor performance," but denied that it had not retracted the statement or released an amended FDD. Moreover, Signal 88's answer claimed it "has complied with all applicable statutes and regulations and, thus, . . . has not defamed [Haffke]" and that Haffke "did not suffer damages or harm attributable to the action or inaction of [Signal 88] as alleged in [Haffke's] complaint." In consideration of these pleadings, there was a known, disputed question of fact about whether Signal 88 issued a correction or amendment, and it was known Signal 88's compliance with § 25-840.01 was at issue.

This case is distinguishable from *Funk v. Lincoln-Lancaster Cty. Crime Stoppers*,[35] in which we held a "failure to request a retraction under § 25-840.01 constitutes an affirmative defense which must be raised prior to trial." In *Funk*, the complaint made an allegation of defamation against the city of Lincoln but made no reference to § 25-804.01. The city's answer raised various affirmative defenses, but did not raise compliance with § 25-804.01. This court in *Funk* noted that the city's argument that the plaintiff was entitled to only special damages because she failed to ask for a retraction was a new matter that raised a new issue.

Here, Haffke's complaint makes it clear that he was alleging that he had sent a request for retraction, that Signal 88 failed to issue a retraction, and that, as such, he was not limited to

---

[35] *Id*. at 729, 885 N.W.2d at 12.

seeking only special damages. Signal 88's answer admitted that Haffke sent a request, but it denied the allegation that it failed to amend the statement. Unlike in *Funk, supra*, Signal 88's reliance on § 28-804.01 was not a new matter that raised a new issue. The parties' pleading put § 25-840.01 at issue, and Haffke had fair notice that Signal 88 was alleging it complied with § 25-840.01. Accordingly, the district court did not err in considering the application of § 25-840.01.

[20] Additionally, in his appellate brief, Haffke did not argue that Signal 88's amended FDD failed to comply with § 25-840.01 and argued only that he was not required to plead or prove special damages because Signal 88 did not raise compliance with § 25-840.01 as an affirmative defense. Although Haffke did raise the argument in his reply brief that the amended statement did not comply with § 25-840.01 and argued that this issue raised a question of fact which should have been determined by the jury before it was determined he needed to plead or prove special damages, Haffke failed to assign and argue it in his initial brief. In the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed.[36] Finding no such plain error here, we decline to address this issue because Haffke failed to assign and argue it in his initial brief.

## CONCLUSION

For the reasons stated above, the district court did not err in giving instructions Nos. 8 and 12. The court also did not err in applying § 25-840.01 and directing a verdict in favor of Signal 88 on Haffke's defamation claim. Accordingly, we affirm.

Affirmed.

---

[36] *Salem Grain Co. v. Consolidated Grain and Barge Co.*, 297 Neb. 682, 900 N.W.2d 909 (2017).